943 A.2d 1260

**Christopher Larry TRIBBITT**

v.

**STATE of Maryland.**

**No. 72, Sept. Term, 2007.**

Court of Appeals of Maryland.

March 13, 2008.

Gary E. Bair (Bennett & Bair, LLP, Greenbelt), on brief, for Petitioner.

Cathleen C. Brockmeyer, Asst. Atty. General (Douglas F. Gansler, Atty. General, Baltimore), on brief, for Respondent.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ALAN M. WILNER, (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

## I.

HARRELL, Judge.

Maryland Code (2002, 2007 Cum.Supp.), Criminal Law Article § 3–602 states that " '[s]exual abuse' means an act that involves sexual molestation or exploitation of a minor...." Christopher Larry Tribbitt, Petitioner, convicted of violating this statute, argues essentially that § 3–602 should be given a much more restrictive meaning, with the result that his conduct in this case was not criminal. We do not agree.

## II.

During the 2003 through 2006 school years, Kylie, the victim,[1] was a student in a physical education class taught by Tribbitt at a Queen Anne's County public middle school. Over this time, Tribbitt and the victim grew "close."

According to Kylie's testimony at trial, Tribbitt requested, in the Spring of 2005, that she show him her thong underwear by pulling up her shirt and pulling down her pants. She

---

1. Kylie was born in May 1991.

complied.[2] In August 2005, at the beginning of her ninth grade year, Kylie joined the school volleyball team. Tribbitt was its coach. Over the course of the volleyball season, Tribbitt touched Kylie inappropriately on four or five occasions in the school's locker room. Kylie testified that he requested that she hug him and rub her thighs up against him. During this hug, she noticed Tribbitt's tumescence. Kylie also claimed that Tribbitt grabbed her "butt" as they walked through the locker room.

On one occasion, when Tribbitt's shoe was untied, he said to Kylie, "can you bend down there and tie it and while you're down there," and, winking at her, "pretty much tugged on his penis...."[3] They then walked together into the equipment room. Kylie testified that, while in the equipment room, Tribbitt "rubbed [her] butt and inner thighs." Next, they walked into the girls' locker room where Tribbitt rubbed Kylie's vaginal area through her pants.

In an encounter later during the volleyball season, Tribbitt grabbed Kylie and played with her thong. She described yet another incident where Tribbitt grabbed her and, with his hand, started "really going down [her] pants and he got like half way down there ...," stopping just above her vagina.

Following a bench trial on 17 November 2006 in the Circuit Court for Queen Anne's County, the trial judge made the following relevant findings of fact:

> [T]here are several things that, probably a lot more than these, that are not in dispute. There was no oral sex; there was no sexual intercourse; there was no digital penetration. In my mind, there was no child pornography. There clearly was somebody who was responsible and that was you, Mr. Tribbitt, in your role, not only as Kylie's teacher, coach, and

---

**2.** The incidents recited here are in addition to numerous internet conversations of a sexual nature not recounted.

**3.** Kylie interpreted this as indicating that Tribbitt was suggesting that she perform oral sex on him. She did not.

what you did was obviously, completely inappropriate, and we'll get to whether it was criminal momentarily.

. . . .

With respect to the statute, 3–602, sexual abuse of a minor, ... there's no dispute that the supervisor here was Mr. Tribbitt. The issue is whether or not, in this case, that sexual abuse is exploitation of a minor and would include sexual offense in any degree.

. . . .

What is clear to me is that over this period of time, there were inappropriate acts that are criminal in nature, that involve sexual offenses which is improper touching. Clear to me, four or five occasions when in middle school, four or five occasions in high school, that there was contact, purposeful contact, where you felt Kylie's butt, not her hip; her vaginal area, rubbed against her. There's no question in my mind that all that occurred. So with respect to Count 1, I have absolutely no doubt that that involves sexual exploitation of Kylie by you, that that was for your own sexual gratification. So as to Count 1, child abuse of a minor, the verdict is guilty.

Tribbitt was sentenced to 25 years in prison, with all but 18 months suspended, and five years of supervised probation. The Court of Special Appeals, in Tribbitt's direct appeal, affirmed in an unreported opinion. We granted Tribbitt's petition for certiorari to consider a single question: "[m]ay sexual contact that does not constitute a sexual offense in any degree or otherwise violate any provision of Maryland law nonetheless provide the basis for 'sexual abuse' within the meaning of Section 3–602 of the Criminal Law Article?"

### III.

Maryland Rule 8–131(c) directs:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard

to the opportunity of the trial court to judge the credibility of the witnesses.

Thus, we refrain from engaging in de novo fact-finding and accept the trial court's factual findings unless they are clearly erroneous. *Glover v. State*, 368 Md. 211, 221–22, 792 A.2d 1160, 1165–66 (2002). When we review a trial court's determinations of legal questions or conclusions of law based on those findings of fact, however, the clearly erroneous standard does not apply. *Heat & Power Corp. v. Air Prods. & Chem. Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990). Instead, we review de novo the trial court's "relation of those facts to the applicable law." *Storetrax.com, Inc. v. Gurland*, 397 Md. 37, 50, 915 A.2d 991, 998 (2007); *see also Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006) (noting that when an issue "involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a de novo standard of review").

## IV.

Tribbitt does not challenge the facts as found by the trial court. Rather, Tribbitt contends that Maryland Code (2002, 2007 Cum. Supp.), Criminal Law Article § 3–602[4] does not criminalize the acts that the trial court found that he committed on Kylie. Section 3–602 states:

**Sexual abuse of a minor.**

(a) Definitions.—(1) In this section the following words have the meanings indicated.

(2) "Family member" has the meaning stated in § 3–601 of this subtitle.

(3) "Household member" has the meaning stated in § 3–601 of this subtitle.

---

**4.** Unless otherwise noted, all statutory references are to Maryland Code (2002; 2007 Cum.Supp.), Criminal Law Article.

(4)(i) "Sexual abuse" means an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not.

(ii) "Sexual abuse" includes:

1. incest;

2. rape;

3. sexual offense in any degree;

4. sodomy; and

5. unnatural or perverted sexual practices.

(b) Prohibited.—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor.

(2) A household member or family member may not cause sexual abuse to a minor.

(c) Penalty.—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 25 years.

(d) Sentencing.—A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for:

(1) any crime based on the act establishing the violation of this section; or

a(2) violation of § 3–601 of this subtitle involving an act of abuse separate from sexual abuse under this section.

Tribbitt's main focus is on the interpretation of § 3–602(a)(4). He argues that § 3–602(a)(4), which defines sexual abuse, requires that, in order to be convicted of a violation of the statute, a defendant's particular acts as found by the trial court must be "otherwise criminal" in nature. We disagree.

The fundamental rules of statutory interpretation are well-settled. " 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English

language dictates interpretation of its terminology.' " *Bowen v. City of Annapolis*, 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576–78, 870 A.2d 186, 193–94 (2005)). "When construing a statute, we recognize that it 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " *Collins v. State*, 383 Md. 684, 691, 861 A.2d 727, 732 (2004) (quoting *James v. Butler*, 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003)). We will "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute...." *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). If the plain language of the statute is unambiguous, "the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' " *The Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 220, 817 A.2d 229, 233 (2003)). "If, however, the meaning of the plain language is ambiguous or unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998) (citing *Haupt v. State*, 340 Md. 462, 471, 667 A.2d 179, 183 (1995)).

�as "It is a fundamental principle of statutory construction that criminal statutes are to be construed narrowly so that courts will not extend the punishment to cases not plainly within the language used." *Farris v. State*, 351 Md. 24, 36, 716 A.2d 237, 243 (1998), *superceded by statute on other grounds as stated in Boffen v. State*, 372 Md. 724, 816 A.2d 88 (2003) (internal quotation omitted). "The rule of lenity, however, is a maxim of statutory construction which serves only as an aid for resolving an ambiguity and it may not be used to create an ambiguity where none exists." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1207 (1994).

■ Tribbitt argues that the plain language of the statute requires that, in order to come within the statutory definition of sexual abuse, his actions must be otherwise criminal. Tribbitt notes that the list of acts that are "included" in the definition of sexual abuses in § 3–602(a)(4)(ii) all are prohibited otherwise by law. Therefore, Tribbitt contends, the Legislature intended that the definition of sexual abuse embraces only acts otherwise prohibited by law.[5] To conclude otherwise, he continues, would render § 3–602(a)(4)(ii) superfluous. Tribbitt is incorrect in his reading of the statute.

■ The key to proper analysis of this argument rests primarily on *Hackley v. State*, 389 Md. 387, 885 A.2d 816 (2005), and its discussion of the statutory meaning of the words "including" and "means." 389 Md. at 392–93, 885 A.2d at 819. In *Hackley*, we addressed the construction of a criminal statute that stated " '[s]talking' means a malicious course of conduct that includes approaching or pursuing another person. . . ." Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27, § 124(a)(3); *Hackley*, 389 Md. at 392, 885 A.2d at 819.[6] We held that the words following "includes" did not make "approaching or pursuing" necessary elements of the offense. We noted, as does Tribbitt in his brief here, that when statutory drafters use the term "means," they intend the definition to be exhaustive. *Hackley*, 389 Md. at 393, 885 A.2d at 819. By contrast, when the drafters use the term "in-

---

**5.** Tribbitt appears to acknowledge, even under his theory, that the definition of sexual abuse is not limited to the acts listed in 3–602(a)(4)(ii). Instead, he contends the definition is limited to those and other criminal offenses generally.

**6.** There is even greater indication in § 3–602(a)(4) than in the stalking statute considered in *Hackley* that the Legislature did not intend for § 3–602(a)(4)(ii) to limit the scope of the definition of sexual abuse in § 3–602(a)(4)(i) to other criminal conduct. The statute in *Hackley* included the phrase "that includes." The word "that" is often used as a relative pronoun that introduces a defining or restrictive clause. WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE, 59 (4th ed.2000); THE CHICAGO MANUAL OF STYLE ¶ 5.42 (14th ed.1993). Section 3–602(a)(4) does not employ the term "that" to introduce the enumeration, thus there is no indication that the Legislature intended the term "includes" to be restrictive in this context.

cludes," it is generally intended to be used as "illustration and not ... limitation." *Id.* (internal quotation omitted); *see also* Maryland Code (1957, 2005 Repl.Vol.), Article 1, § 30 ("The words 'includes' or 'including' mean, unless the context requires otherwise, includes or including by way of illustration and not by way of limitation.").

Tribbitt argues for the exact opposite interpretation of § 3–602(a)(4). He contends that the items following the term "includes" limit the definition of sexual abuse to the enumerated or otherwise criminal acts, instead of being merely illustrative. As in *Hackley*, however, the term "means" is exhaustive. The words following "means" form the broad definition of "sexual abuse." Therefore, "sexual abuse" is defined by the Legislature as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." The list in § 3–602(a)(4)(ii) merely provides examples of acts that come within that definition. *See United States. v. Gertz*, 249 F.2d 662, 666 (9th Cir.1957) ("The likelihood that 'includes' is used in this sense in § 11 is fortified by the fact that in one of the definitions set out in chapter 1 of title 18(§ 9) U.S.C.A., 'means' is used instead of 'includes,' and in another such section (§ 6) both 'means' and 'includes' are used. It would therefore appear that in chapter 1, 'means' is used when the term and its definition are to be interchangeable equivalents, and 'includes' is used when it is desired to eliminate any doubt as to the inclusion in a larger class of the particular class specifically mentioned."); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941) (noting that generally "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126 n. 1, 55 S.Ct. 60, 62 n. 1, 79 L.Ed. 232 (1934) ("That the draftsman used these words in a different sense seems clear. The natural distinction would be that where 'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particular

instances are those specified in the definition."); *Guar. Trust Co. of N.Y. v. W. Va. Tpk. Comm'n,* 109 F.Supp. 286, 296 (S.D.W.Va.1952) ("Clearly, by use of the word 'including' the lawmakers intended merely to list examples of known safety devices, but not to exclude others equally well known."); *Lyman v. Town of Bow Mar,* 188 Colo. 216, 533 P.2d 1129, 1133 (1975) ("Further, the word 'include' is ordinarily used as a word of extension or enlargement, and we find that it was so used in this definition. To hold otherwise here would transmogrify the word 'include' into the word 'mean.' "); NORMAN J. SINGER & J.D. SHAMBIE SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:7 (7th ed. 2007) ("A term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what a term 'means.' ... A definition which declares what a term 'means,' excludes any meaning that is not stated.").

Tribbitt's interpretation of the statute would render much of § 3–602(a)(4) nugatory. To limit the definition of "sexual abuse" to otherwise criminal acts would ignore the Legislature's statement that " '[s]exual abuse' means an act that involves sexual molestation or exploitation of a minor ...." § 3–602(a)(4)(i). Tribbitt essentially would re-draft the statute to state that " 'sexual abuse' means *an otherwise criminal act* that involves sexual molestation or exploitation of a minor." The plain language of the statute clearly contemplates that all acts of sexual molestation and exploitation fall within the definition of sexual abuse.

The textual history, although unnecessary to consider because the plain language of the statute is unambiguous, is particularly damaging to Tribbitt's argument and confirms our view of the plain meaning. Prior to the re-codification of the Criminal Law Article, the prohibition against sexual abuse of a child was found at Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27, § 35C(a)(6)(i). Sexual abuse was defined as "*any* act that involves sexual molestation or exploita-

tion of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member." (emphasis added).[7] "Any" act may not be read to be restricted to only acts made criminal elsewhere. The Special Revisor's Note to the 2002 recodification states that the recodification was "derived without substantive change" from the previous version. Therefore, the proper construction of the statute is that "sexual abuse" still encompasses "any" act that involves sexual molestation or exploitation of a child.

Tribbitt's argument also is contrary to our precedent. We have noted before that the definition of "sexual abuse" is not limited to the crimes enumerated by § 3–602(a)(4)(ii). *See Cooksey v. State*, 359 Md. 1, 24, 752 A.2d 606, 618 (2000) (stating that "a charge of sexual child abuse may be sustained on evidence that would not support a conviction under the sexual offense, rape, sodomy, or perverted practice laws") (citing *Nightingale v. State*, 312 Md. 699, 708, 542 A.2d 373, 377 (1988), *superceded by statute discussed infra* ). Dicta in *Cooksey* seems particularly apt:

> With respect to Count 4, the State alleged conduct ranging from the fondling of the victim's breasts to simply rubbing against her. A jury could certainly find a single incident of some of that conduct to constitute abuse under [the sexual abuse statute], but it might well require more than one

---

7.  Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.) Article 27, § 35C(a)(6)(ii) also provided that " '[s]exual abuse' includes, but is not limited to: 1. Incest, rape, or sexual offense in any degree; 2. Sodomy; and 3. Unnatural or perverted sexual practices."

     To be sure, the earlier version of the child abuse law, Art. 27, § 35C(a)(6)(ii), stated that sexual abuse "includes, but is not limited to" the examples then listed, whereas the new codification, Criminal Law Article, § 3–602(a)(4), merely precedes the list of examples with the word "includes." The Special Revisor's Note to the 2002 recodification, however, expressly points out that although there have been minor changes in wording, there has been no change in substance in the course of moving the offense from Article 27 to the Criminal Law Article. "Includes" still means "includes but is not limited to." *Tate v. State*, 176 Md.App. 365, 376, 933 A.2d 447, 454 (2007).

incident of other conduct in order to find the requisite "sexual molestation or exploitation."

*Cooksey,* 359 Md. at 24, 752 A.2d at 618.

> Whether the touching of a person's 'buttocks' would suffice as sexual contact [and therefore make the sexual abuse also a third or fourth degree sexual offense] is not clear. It might, however, depending on the circumstances, constitute sexual molestation or exploitation, even if it did not constitute sexual contact [and be otherwise criminal]. The same situation could arise from "rubbing against" the victim.

*Cooksey,* 359 Md. at 24 n. 1, 752 A.2d at 618 n. 1.

In *Nightingale,* we observed that a jury may find a defendant guilty of child sexual abuse while finding that the conduct did not otherwise constitute a sexual offense. *See Nightingale,* 312 Md. at 708, 542 A.2d at 377 ("The problem, then, is that we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons (*e.g.,* some sort of sexual molestation which the juries thought did not rise to the level of a sexual offense in any degree)."); *see also Tate v. State,* 176 Md.App. 365, 378–79, 933 A.2d 447, 455 (2007) ("It is enough for us to note that one or more of the jurors might possibly have concluded, rightly or wrongly, that 'rubbing outside the vagina' did not constitute sexual contact within the contemplation of a fourth-degree sexual offense law even though it may have constituted 'sexual molestation or exploitation' within the contemplation of the sexual child abuse law.")

Latching on to the sentencing provision of the statute, Tribbitt argues that, because § 3–602(d)(1) *permits* separate and consecutive sentences for "any crime based on the act establishing the violation of this section," the Legislature intended that the section may be violated only when the conduct also constituted another underlying criminal offense. His interpretation of the statute in this manner is flawed. Had the Legislature intended such a limitation, the Legislature would have permitted consecutive sentences for *"the*

crime based on the act establishing the violation of this section." In fact, § 3–602(d)(1) provides further evidence that the Legislature did not intend to limit the definition of "sexual abuse" to otherwise criminal conduct. Section 3–602(d)(1) notes that an "act," not a "crime," may establish the basis for violation of the child sex abuse statute.

Although it is unnecessary for the disposition of this case to consider legislative history because the plain language of the statute is unambiguous, we note that Tribbitt ignores the legislative history of subsection (d). Section 3–602, in its current form, was created by Chapter 273 of the Acts of 2002.[8] Prior to that enactment, child sexual abuse was prohibited by the statute criminalizing child abuse generally.[9] In addressing the general child abuse statute, in *Nightingale,* 312 Md. 699, 542 A.2d 373, we held that a conviction for second degree sexual offense was a lesser included offense of the sexual abuse portion of the child abuse statute. In so doing, we vacated the portion of the defendant's sentence imposed under the sexual offense statute. The Legislature responded by passing Chapter 604 of the Acts of 1990 for the "express purpose of overruling the holding[ ] in *Nightingale....* " *Fisher v. State,* 367 Md. 218, 242, 786 A.2d 706, 720 (2001); *see also*

---

8. Chapter 167 of the Acts of 2003 increased the maximum sentence from 15 years to 25 years in prison for violation of § 3–602.

9. The Fiscal Note accompanying the bill provides a survey of the law and rationale behind separating sexual abuse and child abuse generally.

[The Department of Public Safety and Correctional Services] and the Department of Health and Mental Hygiene appointed a task force to address criminal and mental health issues related to sexual offenders. The draft report of the Sex Offender Task Force proposed a series of recommendations to better protect the public from sexual offenders. Child abuse is currently defined to include both physical and sexual abuse. The task force suggests that combining these two types of abuse into a single category creates several problems, including problems in data collection regarding this offense and problems for the Division of Correction with respect to its obligations in the area of sexual offender registration. The task force has recommended that child abuse be separated into two statutes, one for physical abuse and one for sexual abuse.

MARYLAND DEPARTMENT OF LEGISLATIVE SERVICES, FISCAL NOTE, H.B. 1194, 2002 Legislative Session.

the Preamble to Chapter 604 of the Acts of 1990 ("An ACT
... FOR the purposes of reversing the holdings of the Mary-
land Court of Appeals in the cases of *Nightingale v. State*, 312
Md. 699, 542 A.2d 373 (1988) and *White v. State* [318 Md. 740,
569 A.2d 1271 (1990) ], by providing that if a conviction is
entered against an individual for murder, rape, sexual offense,
any sex crime, or any crime of physical violence, and a
conviction is also entered for child abuse, a court may impose
sentence for the other offenses separate from and consecutive
to or concurrent with a sentence imposed for child abuse.").
The language added to the general child abuse statute was
carried over to the child sexual abuse statute when the two
were separated. Subsection (d) remains in substantively iden-
tical form to the language enacted in response to our holding
in *Nightingale*. Accordingly, there is nothing in the plain
language or legislative history that would indicate that subsec-
tion (d) should be accorded the meaning desired by Tribbitt.

Although apparently not considered by either party here,
there is precedent from this Court interpreting a statute
where both "means" and "includes" were used in expressing a
definition. In *City of Baltimore Development Corp. v. Carmel
Realty Associates*, 395 Md. 299, 322–323, 910 A.2d 406, 419–20
(2006) (*Carmel Realty* ), we interpreted a statute structured
identically to the one at issue in the present case. The issue
there was whether the Baltimore Development Corporation
(BDC) was a "public body," and thus subject to the State Open
Meetings Act. The definition of a "public body" expressed in
the Act was as follows:

> (h)(1) "Public body" means an entity that:
> 
> (i) consists of at least 2 individuals; and
> 
> (ii) is created by:
> 
> 1. the Maryland Constitution;
> 2. a State statute;
> 3. a county charter;
> 4. an ordinance;
> 5. a rule, resolution, or bylaw;

    6.  an executive order of the Governor; or

    7.  an executive order of the chief executive authority of a political subdivision of the State.

  (2)  "Public body" includes:

    (i) any multimember board, commission, or committee appointed by the Governor or the chief executive authority of a political subdivision of the State, or appointed by an official who is subject to the policy direction of the Governor or chief executive authority of the political subdivision, if the entity includes in its membership at least 2 individuals not employed by the State or the political subdivision; and

    (ii) The Maryland School for the Blind.

Maryland Code (1984, 2004 Repl.Vol.), State Government, § 10–502.

The BDC argued that it was not a public body because it did not meet the definition in § 10–502(h)(1). It, however, appeared to meet the definition in § 10–502(h)(2)(i). The BDC contended that § 10–502(h)(2)(i) was only intended to provide illustrative examples of the types of public bodies defined in § 10–502(h)(1). We disagreed. We held that the two portions of the statutes presented independent, alternative approaches to the definition of a public body because "[§ ] 10–502(h)(2) introduces a new concept and is not a subsidiary section to § 10–502(h)(1)." *Carmel Realty*, 395 Md. at 322–23, 910 A.2d at 419–20. We noted that if the Legislature intended § 10–502(h)(2)(i) to serve as illustrative examples of the definition in § 10–502(h)(1), "it would have been made subject to the prior section and normally would have been designated '§ 10–502(h)(1) ... (iii).' " [10] *Carmel Realty*, 395 Md. at 323, 910 A.2d at 420.

---

**10.** *Carmel Realty* is distinguishable in one respect from the present case. The statute at issue in *Carmel Realty* had two sections, the second of which "introduce[d] a new section" and a "new set of public bodies" that were distinct from those in the first section. By contrast, § 3–602(a)(4)(ii) does not list any crimes that would not otherwise constitute sexual exploitation or molestation. We need not decide here the largely

Tribbitt penultimately contends that a relatively new law enacted by the General Assembly since his trial indicates that the Legislature did not intend the definition of "sexual abuse" to include his conduct. In 2006, the General Assembly amended § 3–308 to prohibit consensual sexual contact between a person of authority and a student enrolled where the perpetrator is employed. Tribbitt argues that this indicates that, prior to the effective date of the amendments to § 3–308,[11] his conduct was not prohibited by law. Agreeing with the State, Tribbitt acknowledges that the amendments to § 3–308 were in response to our opinion in *Anderson v. State*, 372 Md. 285, 812 A.2d 1016 (2002). *See* Statement of Stephen Salvas, Detective/Sergeant, Charles County Sheriff's Office, before the House Judiciary Committee in favor of House Bill 353 (1 March 2006) (describing the need for amendments to § 3–308 in light of *Anderson* ).

In *Anderson*, we affirmed the sexual abuse conviction of a high school teacher who had sexual intercourse with a 14 year-old student enrolled at the school at which the defendant was employed. The issue was whether the defendant was a person with "responsibility for supervision of a child" within the meaning of the sexual abuse statute. We noted that the conviction was proper, despite the fact that the sexual act occurred outside school property and that the student was not taught actually by the defendant, because there was no "temporal break" in the teacher's supervision of the student. *Anderson*, 372 Md. at 294–96, 812 A.2d at 1022–23. Had there

academic question of whether § 3–602(a)(4)(i) and § 3–602(a)(4)(ii) constitute alternative, independent definitions of "sexual abuse" or § 3–602(a)(4)(ii) serves as an illustrative subsidiary to § 3–602(a)(4)(i). We will save that discussion for the day on which we are presented with a case where a defendant manages to commit incest, rape, commit a sexual offense, sodomize, or commit an unnatural and perverted sex practice against a minor victim without also sexually exploiting or molesting the same victim. Regardless of which construction applies, Tribbitt's contention that the definition requires an underlying criminal act is without merit.

11. Tribbitt's conduct occurred before the effective date of the 2006 amendments to § 3–308.

been such a "temporal break," our holding in *Anderson* would have been different.[12] The Legislature saw fit to conform the statute expressly to the Majority interpretation in *Anderson*, amending § 3–308 to prohibit sexual contact between a school employee and student where, at the time of the sexual contact, the employee is employed by the school attended by the student. As a result of the 2006 amendments, any "temporal break" in the supervisory responsibilities of the school employee prospectively became irrelevant.[13] The 2006 amendments were not intended to require other criminal conduct in order to be convicted of sexual abuse under § 3–306. No such amendments were necessary, as the plain language of § 3–602 prohibits acts involving "sexual molestation or exploitation of a minor" by an adult responsible for the minor's supervision.

▮▮▮▮ Tribbitt's final argument rests on the *ejusdem generis* doctrine of statutory interpretation. "[W]here the general words in a statute ... follow the designation of particular things or classes of subjects, ... the general words in the statute will usually be construed to include only those things of the same class or general nature as those specifically antecedently mentioned." *State v. Sinclair*, 274 Md. 646, 658, 337 A.2d 703, 711 (1975).

---

**12.** Chief Judge Bell authored a dissent, joined by Judges Eldridge and Wilner, contending that the facts indicated that the defendant was not a person responsible for the supervision of the child. *Anderson*, 372 Md. at 299, 812 A.2d at 1025 (Bell, C.J., dissenting)

**13.** The Maryland Association of Boards of Education supported the bill, explaining that:

> Under current law, a school employee may be charged with child abuse if the conduct occurs on school property or while the student is engaged in school activities. However, sexual conduct occurring outside this custodial relationship is not subject to the charge of child abuse and no other criminal charge may be available. Under this bill, violators would be guilty of the misdemeanor of fourth degree sexual offense and subject to maximum penalties of a fine of $1,000 and imprisonment for one year.

Memorandum from John R. Woolums, Esq., Director of Governmental Relations with the Maryland Association of Boards of Education, to Maryland House of Delegates Judiciary Committee regarding House Bill 353 (1 March 2006) *available at* http://www.mabe.org/HB353.sexöffenses.pdf (last visited 21 February 2008).

The doctrine of *ejusdem generis* applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53, 55–56 (1993). "The rule of *ejusdem generis*, however, is merely a rule of construction, and cannot be invoked to restrict the meaning of words within narrower limits than the statute intends, so as to subvert its obvious purpose." *Blake v. State*, 210 Md. 459, 462, 124 A.2d 273, 274 (1956).

We have refused previously to apply the doctrine of *ejusdem generis* to this very statute.[14] In *Degren v. State*, 352 Md. 400, 428, 722 A.2d 887, 900 (1999), we stated:

> We decline to utilize the doctrine of *ejusdem generis* in construing this statute. [The sexual abuse statute] enumerates actions describing types of sexual abuse, but the general phrase, "Sexual abuse includes, but is not limited to" [15] precedes the enumerated list and states specifically that the list is not exhaustive. Furthermore, given general legislative policy and the purpose of the child abuse statute to protect minors from abuse, we find it difficult to believe the

---

**14.** This would be an unusual situation to apply *ejusdem generis* in any event. The typical *ejusdem generis* application occurs where a statutory definition includes a list of items, followed by one general category. In this case, the opposite is true. The general terms, defining sexual abuse as "an act that involves sexual molestation or exploitation of a minor," precede the specific list of items. This provides even further indication that the Legislature intended the list of items in § 3–602(a)(4)(ii) to be illustrative.

**15.** As a result of recodification, the words "but is not limited to" were eliminated from the statute. "The Special Revisor's Note to the 2002 recodification, however, expressly points out that although there have been minor changes in wording, there has been no change in substance in the course of moving the offense from Article 27 to the Criminal Law Article. 'Includes' still means 'includes but is not limited to.' " *Tate*, 176 Md.App. at 376, 933 A.2d at 454.

General Assembly chose to limit the forms of sexual abuse punishable to only those listed in [the sexual abuse statute]. Therefore, exercising *ejusdem generis* in this context would limit the meaning of sexual abuse and subvert its obvious purpose. (internal quotation omitted).

We again decline to apply *ejusdem generis* to find the forced and unnatural interpretation of the statute urged by Tribbitt.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**