995 A.2d 1044

**Leon Jerome WALKER**

v.

**STATE of Maryland.**

**No. 2152, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 27, 2010.

Piedad Gomez (Paul B. DeWolfe, on the brief), Baltimore, MD, for appellant.

Daniel Jawor (Douglas F. Gansler, on the brief), Baltimore, MD, for appellee.

Panel: MEREDITH, WOODWARD and JAMES P. SALMON (Retired, Specially Assigned), JJ.

SALMON, J.

Leon Walker was charged in the Circuit Court for Baltimore County with, among other things, possessing a regulated firearm after having previously been convicted of a felony. He was convicted by a jury of that offense and received a mandatory five-year sentence. The jury acquitted appellant of first-degree assault and use of a handgun in the commission of a crime of violence.

The main issue to be resolved in this appeal is whether we should reverse this case under the plain error doctrine because the trial judge instructed the jury that a "firearm" is defined "as a handgun such as a pistol, revolver, or starter pistol." Walker contends that this instruction was erroneous because a weapon can only be characterized as a "firearm" if it "expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive." Walker contends that this instruction prejudiced him in light of the fact that although he admitted to the jury that he possessed a starter pistol, the State's own evidence demonstrated 1) the starter pistol he possessed could not expel a projectile by the action of an explosive, 2) that his starter pistol was not designed to expel a projectile by the action of an explosive, and 3) the starter pistol he possessed could not be readily converted into a weapon capable of expelling a projectile by the action of an explosive.

## I.

Set forth in part I below is a brief summary of the evidence produced in the trial court that is relevant to the issue presented.

On October 1, 2007, appellant and his wife, Donna Walker, lived in Essex, Maryland. Residing with them were three children from Mrs. Walker's previous relationship with one Nathaniel Gale and two of appellant's children. On the after-

noon of October 1, 2007, Mr. Gale came to the Walker home to take his three children to football practice. Mr. Gale and appellant got into an argument that arose because Mr. Gale had heard that appellant had "put his hands on" Gale's youngest son. According to Gale, appellant was standing nearby while he (Gale) was looking in the direction of his children when he heard a loud gunshot sound. Gale ducked behind a nearby car, and heard appellant say, "See what you did? You sent me to jail." Gale then got into his truck and drove off with his children. Appellant did likewise.

A few hours after Gale heard a gunshot fired, appellant returned to his residence and consented to a search of his home by the police. During the consent search, the police recovered a starter pistol in appellant's kitchen. Appellant was later to testify that the starter pistol recovered by the police was the one he used when he fired the gun in Nathaniel Gale's presence.

The State called a firearm expert who examined the starter pistol recovered from appellant's house. He told the jury that the starter pistol had several physical characteristics that did not allow it to fire or to be readily modified to fire a projectile by the action of an explosive. In the expert's words:

> The chambers on this cylinder is so short that it doesn't have any room to put a bullet, a bullet and a cartridge in. There are blocks in each one of those chambers that prevent anything longer going into it. Now, on that cylinder, the front of the cylinder is hollowed out. That would prevent someone from modifying that and putting a bulleted cartridge in and getting it to be able to fire.

> Also there's a block that's cast into the barrel that goes from one side to the other and the full length that would prevent the bullet from coming out this barrel.

The State's theory at trial was that Walker had fired a fully operational handgun to scare Mr. Gale. There was ample evidence to support that theory, including the testimony of appellant's neighbors, Michael Wiatrowski and Steven Wilson. Wilson testified that the starter pistol, which appellant claimed

he used, was not the weapon he saw appellant with immediately after he heard the shot. Wilson said that he could tell the weapon was "a handgun," "could see the silverness of it," and could also see the "little revolver part of it." Wilson also said that immediately after the shooting he saw a bullet hole in the side panel of a vehicle that was parked in the vicinity of the shooting. Near that car, the police recovered a spent bullet, later determined to be a .22 caliber bullet.

The owner of the vehicle damaged by the bullet testified that he had parked the car a few hours before the shooting, at which time it had no bullet holes in it. When he examined the vehicle shortly after the shooting, he saw the bullet hole that was also observed by Wilson.

Michael Wiatrowski saw appellant immediately after the shooting holding what looked like "a small caliber automatic handgun." Appellant was holding the weapon "in his hand, aiming like, in a 45 degree angle down towards the back of a neighbor's vehicle."

Appellant testified that when Gale came to his house on the morning in question, he and Gale got into an argument. He (appellant) went inside his house and retrieved a starter pistol, then came outside and fired it to frighten Gale. According to appellant, the starter pistol he fired was the same one the police found in his house.

In argument to the jury, the State's primary theory was that appellant had used a functional handgun, but as a secondary theory, the prosecutor argued to the jury that even if appellant had used a starter pistol he was still guilty of illegal possession of a regulated firearm.

The trial judge instructed the jury that a starter pistol met the definition of a handgun but appellant's trial counsel did not object to that instruction. This failure to object is somewhat puzzling in light of the fact that prior to trial, counsel for appellant argued that a *motion in limine* should be granted to prevent the prosecutor from arguing to the jury that it could convict appellant of unlawfully possessing a regulated firearm even if the jury were to find that the starter pistol was not a

weapon "that expels and is designed to expel or may readily be converted to expel a projectile by the action of an explosive." The court denied the *motion in limine,* saying:

> I think the statute is abundantly clear. They got [sic] a firearm, in quotations, includes a starter gun. Under 5–101(h)(2) it's abundantly clear. They intended to include starter guns.

## II.

As already mentioned, appellant maintains that the trial judge committed plain error when he told the jury, without qualification, that a starter pistol was a firearm. Appellant contends that the court should have told the jury that a starter pistol could only be a "firearm" if it expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive. We agree with appellant.

The statute under which appellant was convicted was Md. Code (2003 Repl. Vol.) § 5–133(c)(1), of the Public Safety Article ("PS"), which provides: "A person may not possess a regulated firearm if the person was previously convicted of" certain drug felonies. Appellant had previously been convicted of a drug felony that disqualified him from possessing a firearm.

Appellant points out, correctly, that if his testimony was believed he merely possessed a starter pistol; that testimony, coupled with the testimony of the State's ballistic expert, showed that the starter pistol he possessed was not a weapon that "expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive."

During closing argument the prosecutor argued:

> His Honor told you that whether it is a starter pistol, or a handgun, or a revolver, they're all considered handguns in the State of Maryland. If he simply pointed the starter pistol and shot it, that still counts.

\* \* \*

You've heard the law that a *starter pistol is a firearm* in this case. Whether you believe the Defendant used a handgun or revolver or a starter pistol when committing this assault on Mr. Gale, he'd be guilty of being in possession of a firearm. By his own admission, he's guilty.

\* \* \*

He admits being in possession of that starter gun, at the very least, which is a crime because of his prior conviction.

But by his own admission, him owning the starter pistol, possessing the starter pistol, . . . without any doubt makes him guilty of . . . being a prohibited person in possession of a firearm.

(Emphasis added.)

\* \* \*

The first issue we must address is whether a starter pistol is a "firearm" even if it is incapable of expelling a projectile by the action of an explosive or is designed to expel an explosive in that fashion or may readily be converted so that it is capable of expelling a projectile by the action of an explosive.

PS section 5–101(p) reads, in relevant part:

(p) "Regulated firearm" means:

(1) a handgun; or

(2) a firearm that is any of the following specific assault weapons. . . .

The portion of the definition set forth in section 5–101(p)(2), dealing with certain assault weapons, is here irrelevant. Thus we turn to the definition of "handgun" as defined in subsection (n) of PS, section 5–101, viz:

(n)(1) "Handgun" means a firearm with a barrel less than 16 inches in length.

(2) "Handgun" includes signal, starter, and blank pistols.

Section 5–101(h) defines a firearm as follows:

(h)(1) "Firearm" means:

(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or

(ii) the frame or receiver of such a weapon.

(2) "Firearm" includes a starter gun.

In interpreting the definitions of the word "handgun" and "firearm" it is important to bear in mind that both definitions use the word "includes." Appellant argues:

The definition of a "firearm" in 5–101 is clear and unambiguous on its face. A firearm is "a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive." *Id.* § 5–101(h). Contrary to the trial court's conclusion [when ruling on the *motion in limine* ] the General Assembly's inclusion of the phrase "includes a starter gun" does not mean that every gun described as a "starter gun" is a firearm. *Id.* § 5–101(h)(2). Rather, "when the drafters use the term 'includes' it is generally intended to be used as 'illustration and not ... limitation.'" *Tribbitt v. State,* 403 Md. 638, 648 [943 A.2d 1260] (2008) (citing Md.Code Ann., Art. 1, § 30 (1957, 2005 Repl. Vol.)). Thus, the reference to "starter gun" is merely an illustration of an instrument that will constitute a firearm provided that it meets the definition of a "firearm."

Appellant's argument is fully supported by *Tribbitt v. State,* 403 Md. 638, 943 A.2d 1260 (2008). In *Tribbitt,* the Court of Appeals was called upon to interpret Md. Code (2002, 2007 Cum. Supp.), Criminal Law Article ("CL"), section 3–602, which reads, in part, as follows:

**Sexual abuse of a minor.**

(a) Definitions.—(1) In this section the following words have the meanings indicated.

(2) "Family member" has the meaning stated in § 3–601 of this subtitle.

(3) "Household member" has the meaning stated in § 3–601 of this subtitle.

(4)(i) "Sexual abuse" *means* an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not.

(ii) "Sexual abuse" *includes:*

1. incest;

2. rape;

3. sexual offense in any degree;

4. sodomy; and

5. unnatural or perverted sexual practices.

(Emphasis added.)

Tribbitt's interpretation of section 3–602(a)(4) was that the items following the word "includes" limited the definition of sexual abuse to the five enumerated criminal acts set forth in subsection (a)(ii). *Id.* at 648, 943 A.2d 1260. The *Tribbitt* Court rejected that argument. It first interpreted the word "means" as used in CL, section 3–602(a)(4), as follows:

As in *Hackley* [*v. State,* 389 Md. 387, 885 A.2d 816 (2005)], however, the term "means" is exhaustive. The words following "means" form the broad definition of "sexual abuse." Therefore, "sexual abuse" is defined by the Legislature as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not."

*Id.* at 648, 943 A.2d 1260.

The *Tribbitt* Court then explained the meaning of the word "includes" when used in a criminal statute.

The list in § 3–602(a)(4)(ii) merely provides examples of acts that come within that definition. *See United States. v. Gertz,* 249 F.2d 662, 666 (9th Cir.1957) (*"The likelihood that 'includes' is used in this sense in § 11 is fortified by the fact that in one of the definitions set out in chapter 1 of title 18(§ 9) U.S.C.A., 'means' is used instead of 'includes,' and in another such section (§ 6) both 'means' and 'includes' are used. It would therefore appear that in chapter 1, 'means' is used when the term and its definition are to be interchangeable equivalents, and 'includes' is used when it is desired to eliminate any doubt as to the inclusion in a*

*larger class of the particular class specifically mentioned."); Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941) (noting that generally "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 126 n. 1, 55 S.Ct. 60, 62 n. 1, 79 L.Ed. 232, 1934-2 C.B. 267 (1934) ("That the draftsman used these words in a different sense seems clear. The natural distinction would be that where 'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition."); *Guar. Trust Co. of N.Y. v. W. Va. Tpk. Comm'n,* 109 F.Supp. 286, 296 (S.D.W.Va.1952) ("Clearly, by use of the word 'including' the lawmakers intended merely to list examples of known safety devices, but not to exclude others equally well known."); *Lyman v. Town of Bow Mar,* 188 Colo. 216, 533 P.2d 1129, 1133 (Colo.1975) ("Further, the word 'include' is ordinarily used as a word of extension or enlargement, and we find that it was so used in this definition. To hold otherwise here would transmogrify the word 'include' into the word 'mean.'"); *Norman J. Singer & J.D. Shambie Singer, 2A SUTHERLAND STATUTORY CONSTRUCTION* § 47:7 (7th ed. 2007) *("A term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what a term 'means.' ... A definition which declares what a term 'means,' excludes any meaning that is not stated.").*

*Id.* at 648–49, 943 A.2d 1260 (emphasis added).

■ Applying the teachings of the *Tribbitt* case to the one *sub judice,* the word "means" as used in PS section 5–101(h)(1) forms the broad definition of the term "firearm." Under the broad definition of that term, to be encompassed within the term "firearm" the weapon must either expel, or be designed to expel, or be readily susceptible to be converted to a weapon that can expel a projectile by the action of an explosive. In

the definition of "firearm" set forth in PS, section 5–101(h)(2) the word "includes" was used to "eliminate any doubt as to the inclusion in a larger class of the particular class specifically mentioned." *Id.* at 648, 943 A.2d 1260 (quoting *United States v. Gertz,* 249 F.2d 662, 666 (9th Cir.1957)).

There is no doubt that some starter pistols are readily susceptible to being converted into a weapon that can expel a projectile by the explosion of a projectile. *See, e.g., United States v. Mullins,* 446 F.3d 750 (8th Cir.2006). But, as the testimony in this case illustrated, not all starter pistols can be so converted.

In its brief, the State provides a very weak retort to appellant's contention that the word "includes" is merely illustrative of those weapons that meet the definition of a firearm. The State's entire response is as follows:

> [A] starter gun need only satisfy the second, disjunctive clause of the first paragraph. Under that second clause, frame and receiver parts are considered a "firearm" without limitation that the part expel, be designed to expel, or readily be convertible to expel a projectile. Pub. Safety § 5–101(h)(1)(ii). Because the statute covers the frame of a starter pistol, the State validly pursued this legal theory.

We agree with the State that to meet the definition of "firearm" a starter gun need only satisfy the "second, disjunctive clause of the first paragraph" of PS, 5–101(h)(1). We disagree, however, with the second and third sentence of the State's argument. The second disjunctive clause of the first paragraph of subsection (h) uses the phrase "such a weapon." The term "such a weapon" means, obviously the type of weapon referred to in PS, section 5–101(h)(1)(i), i.e., "a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive." Nothing in the record supports a finding that the starter pistol found by the police in appellant's kitchen was "such a weapon" as that described in the first disjunctive clause of the first paragraph

of PS, section 5–101(h). Nor was there any evidence that the frame of the starter pistol met that definition.[1]

The appellant's argument that no words used in 5–101(h)(2) can be construed to support the State's argument is strongly bolstered by the Legislative history of PS, section 5–101(h), which was discussed in detail in *Moore v. State*, 189 Md.App. 90, 983 A.2d 583 (2009). In *Moore*, Judge Paul Alpert, speaking for this Court, said:

> The Revisor's Note to P.S. § 5–101(h) indicates that "[t]his subsection is new language derived without substantive change from former Art. 27 § 441(i)." Former Section 441(i) provided as follows:
>
> (i) "Firearm" means:
>
> (1) Any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; or
>
> (2) The frame or receiver of any such weapon.
>
> Md. Code (1957, 1996 Repl. Vol.), § 441(i) of Article 27 (superseded).
>
> Section 441(i) was added as part of the Maryland Gun Violence Act of 1996. *See* 1996 Md. Laws, chs. 561, 562. Relevant to our discussion, one of the purposes of that Act included "revising, reorganizing, and clarifying certain laws pertaining to the sale, rental, or transfer of certain regulated firearms by certain individuals." 1996 Md. Laws, ch. 561, p. 3140. There is both a Senate and a House version of the bill, and the Senate Floor Report, as well as the House Judiciary Bill Analysis, provide the following summary:
>
> \* \* \*

---

**1.** Recently, in *Moore v. State*, 189 Md.App. 90, 101 n. 3, 983 A.2d 583 (2009), we briefly discussed PS section 5–101(h)(1)(ii) as follows:

Although "frame or receiver" is not defined in the Maryland statutes, we note that the Bureau of Alcohol, Tobacco, and Firearms regulations with respect to commerce in firearms and ammunition defines "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11.

With respect to the definition of "firearm" in Section 441(i), the Floor Report states that this subsection provides a "[n]ew definition consistent with federal law." Floor Report, Senate Bill 215, p. 6. That the Legislature sought consistency with federal law is evident in much of the history of the Maryland Gun Violence Act of 1996. *See* Press Release from the United States Attorney for the District of Maryland (March 12, 1996) (providing details of a report from Baltimore Police Commissioner Thomas C. Frazier, United States Attorney Lynne A. Battaglia, State's Attorney for Baltimore City, Patricia C. Jessamy and M. Stewart Allen, Special Agents in Charge of the Bureau of Alcohol, Tobacco and Firearms on the progress of the DISARM Program, a program designed to "combat gun-related violence in Maryland by seeking federal prosecution for felons who are arrested with a gun and who have a substantial record of convictions for violent and/or drug trafficking crimes").

Section 441(i) appears to be based on 18 U.S.C. § 921(a)(3), which defines a "firearm" as follows:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3); *see also* 18 U.S.C. § 922(g)(1) (making it unlawful for certain individuals, including those convicted of a crime punishable by incarceration exceeding a year, as well as unlawful users of controlled dangerous substances, from possessing a firearm).

\*     \*     \*

*Id.* at 102–104, 983 A.2d 583.

The federal cases interpreting the statute from which PS subsections 5–101(h) and (n) were modeled, all support appellant's argument that a starter pistol may only be considered to

be a "firearm" if the starter pistol expels, or is designed to expel, or may readily be converted to expel projectiles. *See Mullins*, 446 F.3d 750; *United States v. Burnett*, 16 F.3d 358 (9th Cir.1994); *United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463 (2d Cir.1971).

■ In *Mullins, supra*, there was testimony from an expert that the starter gun possessed by the defendant "could readily be converted to expel a projectile." 446 F.3d at 755. Here, the expert testimony was the exact opposite. For the aforegoing reasons, we hold that the trial judge erred when he told the jury, without qualification, that a starter pistol was a firearm. He should have told the jurors that if they believed appellant's testimony that the weapon he displayed was a starter pistol, the defendant should be acquitted of the charge of possession of a regulated firearm after having been convicted of a felony.

■ The State argues that even if the trial judge erred in its instruction concerning the definition of a firearm, the error was unpreserved. The State is correct in this regard. Nevertheless, appellant relies on the last sentence of Maryland Rule 4–325(e). Section (e) of Maryland Rule 4–325 reads:

(e) **Objection.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. *An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.*

(Emphasis added.)

The instructional error in this case was indisputably "material to the rights" of appellant. If the jury had been correctly instructed and if the jurors believed appellant's testimony that he was in possession of the starter pistol found in his house,

the jury would have been obliged to acquit him of the firearm charge. This error was important, because it allowed the prosecutor to tell the jury in closing arguments that the law in Maryland was that "a starter pistol is a firearm" and therefore even if appellant's testimony was believed, he still would be guilty of the charge of possession of a firearm by a convicted felon.

Recently, in *Diggs and Ramsey v. State*, 409 Md. 260, 286, 973 A.2d 796 (2009) the Court of Appeals set forth a brief explanation as to when plain error review should be granted, viz:

> Plain error is "error which vitally affects a defendant's right to a fair and impartial trial." *State v. Daughton*, 321 Md. 206, 211 [582 A.2d 521] (1990), citing *State v. Hutchinson*, 287 Md. 198, 202 [411 A.2d 1035] (1980). We have recognized the boundaries of that error to which we apply our review as that which is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Abeokuto v. State*, 391 Md. 289, 327 [893 A.2d 1018] (2006), quoting *Richmond v. State*, 330 Md. 223, 236 [623 A.2d 630] (1993) (citations omitted). *See also Rubin v. State*, 325 Md. 552, 588 [602 A.2d 677] (1992); *Hutchinson*, 287 Md. at 203 [411 A.2d 1035]. We will "intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial." *Trimble v. State*, 300 Md. 387, 397 [478 A.2d 1143] (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). In each case, we will "review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Hutchinson*, 287 Md. at 203 [411 A.2d 1035].

*Id.* at 286–87, 973 A.2d 796.

The error here at issue was not "purely technical" because the instruction made it impossible for the appellant to succeed in his defense as to the one charge of which he was convicted.

Nor was the error "the product of conscious design or trial tactics or the result of bald inattention." It is very likely that defense counsel made no objection to the instruction because trial counsel felt that it would have been useless to object in light of the fact that the trial judge, when confronted with this exact point, had earlier said: "I think the statute is abundantly clear. . . . [A] 'firearm,' includes a starter pistol. Under 5–101(h)(2) it's abundantly clear. They [the Legislature] intended to include starter pistol guns. Motion is denied." That interpretation of the word "includes" is in direct contradiction to what the Court of Appeals said in *Tribbitt v. State, supra,* and in *Hackley v. State,* 389 Md. 387, 885 A.2d 816 (2005).

▬▬ Our discretion to recognize or disregard plain error is plenary. *Austin v. State,* 90 Md.App. 254, 261, 600 A.2d 1142 (1992). To recognize or disregard plain error, one of the factors to be considered is judicial efficiency. If we were to deny plain error review in this case, even though we agreed with appellant's contention that the court error might well have affected the jury's verdict, the inevitable result would be a post-conviction action based on trial counsel's failure to object to the instruction. If such an action were brought, it would likely be successful.

Another factor influencing our decision to recognize plain error is the fact that the trial judge had a chance to consider the same issue presented in this appeal, when he denied appellant's *motion in limine.* Therefore, unlike the situation presented in many cases where we are asked to recognize plain error, the point raised is not the product of pure appellate afterthought.

Lastly, as to the only charge of which he was found guilty, the instruction given denied appellant a fair trial.

For the aforegoing reasons, we grant appellant's request to recognize the plain error in the court's instructions. Accordingly, we shall vacate appellant's conviction for possession of a firearm by a disqualified individual and remand this case to

the Circuit Court for Baltimore County for a new trial as to that charge.[2]

## III.

In his brief, appellant makes two arguments which we have thus far not discussed. Appellant contends that the trial judge erred when he denied the *motion in limine* that sought to prohibit the prosecutor from arguing that a starter pistol is a regulated firearm *per se* under the applicable statute. In light of what we have said in Part II, *supra*, that issue is moot because it will not recur upon re-trial.

Appellant also argues that, "[a]ssuming that the court adopts" the State's position that a starter pistol is a firearm, regardless (as to) whether it can expel, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive then the statute is "unconstitutionally vague." We need not decide that issue because we do not adopt the State's position.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW TRIAL AS TO THE CHARGE OF POSSESSION OF A FIREARM BY A DISQUALIFIED PERSON; COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

2. A new trial is warranted because the State presented sufficient evidence, if credited, to prove appellant guilty as to the possession of a firearm offense. Appellant did not argue to the contrary.