981 A.2d 34

**David Joseph LAPIN**

v.

**STATE of Maryland.**

No. 2292 Sept. Term, 2007.

Court of Special Appeals of Maryland.

Oct. 1, 2009.

58

Renee M. Hutchins (Nancy Forster, Public Defender on the brief), Baltimore, for appellant.

Cathleen Brockmeyer (Douglas Gansler, Attorney General on the brief), Baltimore, for appellee.

Panel: JAMES R. EYLER, GRAEFF and KEHOE, JJ.

GRAEFF, J.

A jury sitting in the Circuit Court for Prince George's County convicted David Joseph LaPin, appellant, of sexual abuse of a minor, second degree assault, and fourth degree sexual offense. Appellant appealed his convictions, and he presents two issues for our review, which we have rephrased: [1]

---

1. Appellant presented the following issues in his brief:

1. Did the circuit court err in declining to give appellant's proposed jury instruction regarding the definition of "abuse" as it pertains to a fourth degree sexual assault?

2. Was the evidence sufficient to support appellant's convictions for sexual abuse of a minor and fourth degree sexual offense?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2007, the victim, age 14, and her 16–year-old brother, Christopher, visited their grandfather at his home. Appellant, the victim's 46–year-old uncle, was also present in the home, as was the victim's 20–year-old sister, Jessica, and another uncle, Daniel Watson.

The victim testified that, while she was in the kitchen with appellant and her sister Jessica, appellant "repeatedly touched [her] chest." She told appellant to stop, but he did not stop. The victim was upset and scared, so she hit appellant on his chest, telling him again to stop and stating: " 'How do you like it?' " Appellant responded: " 'Oooh, baby.' "

The victim left the kitchen and went to the computer room to use the computer. Appellant was there, using the computer and "looking at porn on a My Space page."[2] Appellant was

---

1. Should David LaPin's convictions for sexual abuse of a minor and fourth degree sexual offense be reversed because the trial judge refused to include David's proposed jury instruction on "abuse" when the proposed instruction was a correct statement of the law, was properly requested under Maryland Rule 4–325, and would have prevented juror confusion?
2. Should David LaPin's convictions for sexual abuse of a minor and fourth degree sexual offense be vacated because there was insufficient evidence when the State's evidence did not establish that the touching was for the purpose of sexual arousal or gratification or the abuse of either party?

2. MySpace is a social networking web site that was described in testimony as "like a dating web site, but you can meet friends and talk to old people that you went to school with."

viewing "a girl in a leather suit that was half naked, and he said, 'I'm going to whip you with a whip and put you in this suit.'" That comment made the victim uncomfortable, so she left the computer room and went outside.

Appellant came outside, and he "unexpectedly . . . grabbed my private area." He touched her "vagina area" on the outside of her clothing. The victim testified that she did not want appellant to touch her there or on her breast. The victim told her sister what happened. Jessica instructed her to "[g]o tell Danny." Danny directed the victim to "stay away from [appellant]."

The victim testified that, the weekend before, appellant stated to her: " 'I'm going to cut your breasts off and mount them on the wall.'" She did not know why appellant said that.

Robert Lawrence LaPin, the victim's father and appellant's younger brother, testified that, on January 30, 2007, while at work, he spoke to his daughter on the phone, and she informed him that she was "touched inappropriately" by appellant, who "fondl[ed] her breasts and private parts." Robert informed his daughter that he would handle the situation once he arrived at the house. Robert "wanted to hear both sides of the story" because "at that time [the victim] had a way of blowing things way out of proportion." Robert arrived at the house at approximately 6:00 p.m., and he was in the kitchen with the victim and appellant when appellant grabbed his daughter's breast and stated: " 'Oooh, these are nice, I need to mount these on the wall.'" Robert rebuked appellant, and appellant responded by threatening that Robert "could be put down" if he "said or did anything about it." Robert removed the victim and his son from the house, and he called the police.[3]

---

**3.** Robert stated that he did not take Jessica, his older daughter, out of the house because she did not live with him, she was twenty-years-old, and she "pretty much does her own thing."

Officer Steven Durity, a police officer with the Prince George's County Police Department, responded to a call for an alleged assault. The victim stated that appellant "grabbed her breast and twisted it, twisting the nipple." After speaking with appellant and other family members, Officer Durity questioned the victim again to get all the details. At that time, the victim stated that they "were actually playing." The Officer summarized her statement as follows:

> She grabbed him, he grabbed her back. She grabbed him a second time, he grabbed her back the second time. At that point she stated that she didn't want to play, to stop, and then that's when he grabbed her following after that, and I suppose that's when she called the Police.[4]

Officer Durity did not arrest appellant at the house "[b]ased on the fact that the suspect [was] a known family member, and the discrepancies in the victim's statement." He forwarded the incident report to the Sex Crimes Unit to conduct an investigation.

Detective John Greever, the investigating officer, testified that he interviewed several people at the police station the night of the incident, including the victim, her father, her sister, and appellant. The victim's "eyes were puffy, she was crying, she was very upset." She informed Detective Greever that appellant "grabbed her on the breast and twisted her breast area on the nipple area, and he grabbed her on her private part between her legs." The victim stated that her sister was in the kitchen when appellant grabbed her breasts. The victim's brother, Christopher, did not give a statement, maintaining that "he did not see anything." A couple of days later, however, Christopher came to the police station to make a statement regarding the incident.

Appellant's step-brother, Daniel, testified that on the day of the incident, he was living at his father's house with appellant and Jessica LaPin, the victim's sister. He did not see any

---

4. In his report, Officer Durity indicated that the victim "changed her story."

"exchange" between appellant and the victim, but he heard appellant tell the victim to "leave him alone" as she followed him from the kitchen into the computer room. Daniel also testified that both the victim's father and appellant called the police, and Daniel drove appellant to the police station later that night to give a statement.

Jessica, the victim's older sister, testified that she was in the kitchen with the victim and appellant on the date in question. She testified that, while appellant was making soup, the victim grabbed his "balls and breasts." Appellant told the victim to stop, but the victim refused. Appellant responded by stating: "Well, I'm going to cut your titties off and mount them on the wall." The victim "repeatedly kept doing it over and over again." Appellant left the kitchen and went to the computer room to use the computer. The victim followed him into the room. While appellant was on the phone with a woman named Karen, he commented on pictures that she had posted on the website MySpace and stated: "I would like to put that in leather and use whips, chains on her." The victim mistakenly believed that appellant directed those comments at her, when "he was really talking to Karen." Jessica testified that appellant "never touched [the victim] at all." Jessica acknowledged that she does not get along with her sister.

Christopher, the victim's older brother, testified that he did not make a statement to the police on January 30, 2007, because the Detective did not ask him if he wanted to make a statement. Christopher testified that the appellant and the victim were "playing around" in the kitchen, "pinching each other and laughing about it." After the victim followed appellant into the computer room, she "started touching him and grabbing him," and she ignored appellant's requests to stop. Christopher testified that appellant's statement regarding cutting off the victim's breasts and mounting them on the wall came after the victim refused to stop pinching appellant. The victim responded to this statement by laughing. Christopher told the police that he saw appellant grab the victim's breast, but when the victim told him, Jessica, and Danny that appellant touched her, he said that "it didn't happen," advising that

he was "right there following her the whole time so she would leave [appellant] alone." Christopher acknowledged feeling sorry for appellant.

Appellant testified in his own defense. He acknowledged that he touched the victim's breast and that he "may have" touched the victim between her legs on the outside of her clothing. He denied, however, that he touched the victim for purposes of sexual gratification, sexual arousal, or to physically harm her. He testified that it was "fun and games at first," which began when he was in the kitchen making soup, the victim pinched him, and he responded by pinching her back. According to appellant, the victim continued to pinch him, and she refused to leave him alone. Appellant smoked a cigarette outside and then went into the computer room and closed the door behind him. He logged onto MySpace and received a phone call from "a girl [he] met online on My Space." The victim entered the room and placed an old shoe in his face. Appellant became angry and the victim "proceeded to pinch [appellant] again and punch [appellant] in [his] private areas." Appellant then left the house and took his dog for a walk. Upon returning, the victim informed appellant that "[m]y dad is going to whip your ass when he comes here." Appellant attempted to go to his bedroom, but the victim pinched him again, and he responded by stating: "[I]f you're not going to stop, I'm going to take your boobs and mount them [ ] on the wall and see . . . how you like other people to pinch you. . . ." According to appellant, the victim then grabbed his "private area." He testified that when her father subsequently called 9-1-1, he also called 9-1-1.

At the end of the State's case, appellant moved for judgment of acquittal on the charge of third degree sexual offense. The State agreed to enter a *nolle prosequi* with respect to that count. The circuit court then denied appellant's motion with respect to the remaining counts.

At the close of all the evidence, appellant again moved for judgment of acquittal, arguing that the motion should be granted with respect to the charges of sexual abuse of a minor

and fourth degree sex offense because "[t]here hasn't been a sufficient showing that the touching or grabbing . . . was for the purpose of sexual arousal or gratification." Appellant further argued that there was "not a sufficient showing that [appellant] intended any physical harm to" the victim. The circuit court denied appellant's motion.

Prior to the court instructing the jury, defense counsel requested that the court include in its instructions a definition of the term "abuse" with respect to the charge of fourth degree sexual offense.[5] Defense counsel requested that the court define "abuse" as a "physical attack intended to inflict sexual injury." Appellant argued as follows:

> [T]he Dillsworth case [6] is the case that defines what constitutes abuse for purposes of sexual contact. The point is this. If a person commits an act for sexual gratification or arousal, sexual arousal, you have that element. That element is met. However, if the intention isn't for sexual arousal, this is in the disjunctive, if it's not for sexual arousal or for gratification, then you turn to abuse.
>
> Now, if you want to have some generic big all encompassing term of abuse, which the State is advocating for, it is completely contrary to the case law. I cited Dillsworth. If it's going to be—if the intention was not for sexual arousal, if it was not for sexual gratification, then it has to be for abuse. And in fact, yes, the abuse has to be with the intent to cause physical injury. . . . In other words, if it isn't for sexual gratification or for sexual arousal, there has to be an intent to cause physical injury. And that's what the case law says.

---

5. As discussed in more detail, *infra*, a fourth degree sexual offense involves "sexual contact," which requires a touching "for sexual arousal or gratification, or for the abuse of either party." Maryland Code (2002), § 3–301(f)(1) of the Criminal Law Article ("C.L.").

6. *Dillsworth v. State*, 66 Md.App. 263, 503 A.2d 734 (1986), *aff'd on other grounds*, 308 Md. 354, 519 A.2d 1269 (1987).

What the State wants you to do is to go contrary to the case law that limits the definition of abuse. And that's what I ask the Court to do today.

The State objected to this instruction on the ground that it was misleading in that it suggested that physical injury was required.

After considering counsels' arguments, the circuit court rejected appellant's proposed definition of abuse, reasoning as follows:

Well, I guess my problem with it is that the *[Dillsworth]* case is so closely tied to the specific facts of that case that this statement, while I agree that it can be a means of defining abuse, it doesn't have to be. And, so, I could say that abuse can mean that if the jury were to define it that way, but they're not required to. I don't think that the facts of this case control in the same manner in which the *Dillsworth* case. In that case, the Defendant specifically pulled at the woman's vaginal area causing lacerations, and so there was no intent to have sexual arousal or gratification, but the intent which he clearly stated to the victim at that time was to pull her vagina out, or some words to that effect. And the Court in that case said that the sexual injury, even though there was no sexual arousal or gratification, was sufficient to find, and in that case it was a third degree sex offense not a fourth degree sex offense.

\* \* \*

Well, I'm going to not include it because I really believe the facts in this case have not really brought to bear the need for an instruction relating to sexual injury. As I said, the *Dillsworth* case was so specifically tied to the defendant's statements as to what he was going to do, and then his actual actions.

The circuit court instructed the jury on the charges of sexual abuse of a minor and fourth degree sex offense as follows:

[T]he Defendant is charged with sexual child abuse. Child abuse is sexual molestation or exploitation of a child under 18, in this case caused by a family member. In order to convict the Defendant of child abuse, the State must prove: One, that the Defendant was a family member; two, that the victim was, at the time, under 18 years of age; and, three, that the Defendant sexually molested or exploited the victim by a fourth degree sex offense.

Now, okay, so let me tell you what fourth degree sex offense means.

The Defendant is charged with the crime of fourth degree sex offense. In order to convict the Defendant of fourth degree sex offense, the State must prove: That the Defendant had sexual contact with the victim; and that the sexual contact was made against the will and without the consent of the victim.

Now, sexual contact means the intentional touching of the victim's genital, anal or other intimate parts for the purpose of sexual arousal, gratification, or for the abuse of either party.

At the conclusion of the instructions, defense counsel objected to the instruction on the fourth degree sex offense. Counsel took exception to the court's failure to include the language he requested regarding the definition of abuse.

The jury convicted appellant of one count of sexual abuse of a minor, one count of second degree assault, and one count of fourth degree sexual offense. On November 9, 2007, the circuit court imposed sentence. On the conviction for sexual abuse of a minor, the court imposed a sentence of ten years, with all but three years suspended. On the conviction for fourth degree sexual offense, the court imposed a one year concurrent sentence. The second degree assault count conviction merged into the fourth degree sexual offense conviction.

This timely appeal followed.

## DISCUSSION

### I.

### Jury Instructions

Appellant's first contention is that the circuit court erred in its instructions to the jury on the charge of fourth degree sexual offense. Maryland Code (2002), § 3–308 of the Criminal Law Article ("C.L."), defines a sexual offense in the fourth degree as, among other things, "sexual contact with another without the consent of the other." Section 3–301(f) defines "[s]exual contact" as "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, *or for the abuse of either party.*" (Emphasis added).

Appellant argues that the court erred in denying his requested jury instruction, which defined "abuse" as "a physical attack intended to inflict sexual injury." Appellant argues that this definition of abuse is consistent with this Court's holding in *Dillsworth v. State,* 66 Md.App. 263, 269, 503 A.2d 734 (1986), *aff'd on other grounds,* 308 Md. 354, 519 A.2d 1269 (1987), and that the meaning of the term abuse "was critical to [his] theory of the case." Appellant contends that the instructions deprived him of a fair trial because the term "abuse" for purposes of a fourth degree sex offense is narrower than sexual abuse for purposes of the offense of sexual abuse of a minor, and the failure to clarify the terms was misleading and confusing to the jury.

The State argues that the circuit court properly denied appellant's requested jury instruction because appellant's proposed instruction was an incorrect statement of the law. It argues that the term abuse, as contemplated by the statute, is not limited to the sole definition proposed by appellant.[7]

---

7. With respect to appellant's second assertion, that the court's instructions denied him a fair trial because they confused and misled the jury, the State argues that this contention was not argued below, and therefore, it is not preserved for review. We read appellant's argument in this regard, not as raising a new ground of error, but as showing

Maryland Rule 4–325(c) provides that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." As the Court of Appeals has stated:

> Rule 4–325(c) has been interpreted consistently as requiring the giving of a requested instruction when the following three-part test has been met: (1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given.

*Dickey v. State,* 404 Md. 187, 197–98, 946 A.2d 444 (2008). *Accord Tucker v. State,* 407 Md. 368, 379–80, 965 A.2d 900 (2009). "In general, a party is entitled to have his theory of the case presented to the jury through a requested instruction provided that theory is a correct exposition of the law and it is supported by the evidence." *Martin v. State,* 174 Md.App. 510, 521–22, 922 A.2d 598 (2007) (citing *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1 (1985)). As the State points out, however, the court "is under no obligation to give an instruction containing an incorrect statement of the law to the jury." *Riggins v. State,* 155 Md.App. 181, 223, 843 A.2d 115, *cert. denied,* 381 Md. 676, 851 A.2d 595 (2004).

Thus, we must determine whether appellant's proposed instruction was a correct statement of the law. As indicated, appellant contends that it is, citing this Court's decision in *Dillsworth.* The State, however, argues that the statutory term "abuse" should be given its "ordinary and usual meaning." Citing to several dictionary definitions, the State argues that "abuse" is not limited to physical injury, but rather, it "can be psychological, social, or physical in nature."

In determining the meaning of the term "for the abuse of a party," we turn to well settled principles of statutory interpretation. " 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statu-

how appellant was prejudiced by the failure to include his requested definition of abuse, and why he contends he is entitled to reversal of his convictions. In this context, there is no preservation problem.

tory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.' " *Tribbitt v. State,* 403 Md. 638, 645–46, 943 A.2d 1260 (quoting *Bowen v. City of Annapolis,* 402 Md. 587, 613, 937 A.2d 242 (2007)), *cert. denied,* —— U.S. ——, 129 S.Ct. 132, 172 L.Ed.2d 38 (2008). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Ray v. State,* 410 Md. 384, 405, 978 A.2d 736 (2009) (filed Aug. 27, 2009) (citing *Barbre v. Pope,* 402 Md. 157, 173, 935 A.2d 699 (2007)). "If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute." *Id.* at 405, 978 A.2d 736.

This Court addressed the meaning of the term "abuse" in *Dillsworth,* 66 Md.App. at 269, 503 A.2d 734. In that case, Dillsworth attacked his girlfriend, saying that he would "rip [her vagina] out." *Id.* at 266, 503 A.2d 734. Dillsworth "put his hand inside [her] and started to pull and tear," resulting in a "six centimeter-long, one centimeter-deep laceration inside [the victim's] vagina." *Id.* Dillsworth argued that there was insufficient evidence to support his conviction for third degree sex offense. Specifically, he argued that there was insufficient evidence that his actions constituted "sexual contact" because there was no evidence that the act was for the purpose of "sexual arousal or gratification." *Id.* at 268, 503 A.2d 734.

This Court held that the term "sexual contact" included a wrongful touching for three purposes: sexual arousal, sexual gratification, or "for abuse." *Id.* at 270, 503 A.2d 734. The Court noted that the three purposes were listed in the disjunctive, and therefore, it rejected the argument that a conviction could not be upheld if the touching was not for sexual arousal or gratification. *Id.* at 270–71, 503 A.2d 734. Rather, pursuant to the statute, a touching "for the abuse" of a party would constitute sexual contact.

In addressing the meaning of the term "abuse," this Court noted that other courts had construed the term "abuse," as it related to sex offenses, as "a wrongful or defiling sexual touching." *Id.* at 270, 503 A.2d 734. The Court characterized these other jurisdictions as rejecting a definition of "abuse" to include a mere physical injury. *Id.* The Court declined to adopt that definition, and it held that the term "abuse," in the context of a sexual offense, encompassed a physical attack intended to inflict sexual injury. *Id.* at 268, 503 A.2d 734.

*Dillsworth* did not hold, as appellant argues, that the term "abuse" was limited to a touching intended to cause physical injury. Rather, it addressed the term as it applied to the facts of that case. This Court, in *Dillsworth,* did not attempt to define the scope of the term "abuse." We will do so now.

■ In determining the meaning of the word "abuse" for a fourth degree sex offense, we look first at the dictionary definition of the word for "insight as to the legislative intent." *See Stachowski v. Sysco Food Servs. of Balt., Inc.,* 402 Md. 506, 525, 937 A.2d 195 (2007). Although "[d]ictionary definitions are not dispositive as to the meaning of statutory terms," "such definitions provide a useful starting point for discerning what the legislature could have meant in using a particular term." *Id.* (citing 2A NORMAN I. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.28 (7th ed.2007)); *Marriott Empls Fed. Cr. Union v. MVA,* 346 Md. 437, 447, 697 A.2d 455 (1997).

Dictionary definitions of abuse are not limited to abuse involving physical injury. *See* BLACK'S LAW DICTIONARY 10 (8th ed.2004) (defining "abuse" as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 8 (2002) (defining "abuse" as "to use or treat so as to injure, hurt, or damage"); I THE OXFORD ENGLISH DICTIONARY 59 (2nd ed.1989) (defining "abuse" as "[t]o ill-use or maltreat; to injure, wrong, or hurt" or "violate, ravish, defile"); THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 9 (2nd ed.1987) (defining "abuse" as "to treat in a harmful, injurious, or offensive way").

■ The plain language of the words used by the General Assembly do not support appellant's argument that the term "abuse" in the statute is limited to physical injury. Rather, the plain language of the statute supports the conclusion that the term "abuse" includes a touching for the purpose of physical, mental, emotional, or sexual injury.

Because there is some ambiguity in the term, however, we look to the legislative history regarding the definition of "sexual contact." In 1976, the General Assembly enacted a "comprehensive legislative package" "to reform and codify this State's rape and sexual offense laws." *State v. Boozer,* 304 Md. 98, 102, 497 A.2d 1129 (1985). This legislation resulted in a range of sexual crimes: two degrees of rape and four degrees of sexual offenses. *Lane v. State,* 348 Md. 272, 286, 703 A.2d 180 (1997). One purpose of the legislation was "to provide viable criminal sanctions for those transgressions falling within the gap . . . existing between the common law misdemeanor of assault and the felony of rape which is punishable by life imprisonment." Sen. Rep. on S.B. 358, at 1, Senate Judicial Proceedings Committee (Undated); 1976 Md. Laws, Chap. 573; *see generally* J. William Pitcher, *Rape and Other Sexual Offense Law Reform in Maryland, 1976–1977,* 7 U. Balt. L.Rev. 151–70 (1977). The legislation was intended to delineate "degrees of sexual offenses according to factors which logically reflect the probable severity of traumatic impact of the experience on the victim," and equates the "likely psychic injury of a victim" with the punishment of the aggressor. Sen. Rep. on S.B. 358, at 11.

As part of this 1976 legislation, the General Assembly added the definition of "sexual contact" for the new offenses of third and fourth degree sexual offense:

"Sexual contact" as used in [the third degree sexual offense statute] and [the fourth degree sexual offense statute], means the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party. . . . It does not include acts commonly expres-

sive of familial or friendly affection, or acts for accepted medical purposes.

Maryland Code (1976 Repl.Vol., 1977 Cum.Supp.), Art. 27 § 461(f).

The parties have not cited to any legislative history relating to the definition of the term "abuse," and we did not find any. We did find some discussion regarding the purpose of adding sexual offenses in a January 1976 report from the Governor's Commission to Study Implementation of the Equal Right's Amendment, which discussed issues in rape legislation. This report presented the question: "Why create Third Degree Sexual Offense when unpermitted touchings of the anal or oral area of another person are presently prosecuted as the common law crimes of assault and battery." *Rape Law Reform in Maryland*, at 6 (January 1976), *in* GOVERNOR'S COMMISSION TO STUDY IMPLEMENTATION OF THE ERA: ISSUES IN RAPE LEGISLATION 1975–1976. The Committee explained that, although assault, *i.e.*, "any placing of another in fear of injury with the actor's apparent ability to inflict injury," and battery, *i.e.*, "unpermitted touching," were already criminalized in Maryland, this legislation would recognize a distinction between "sexually oriented acts" and "non-sexually oriented acts." *Id.* The Commission explained:

[S]ome sex offenders will have arrest and conviction records for assault and battery and the police will overlook them as suspects in sex offense cases. The Boston Strangler, for instance, was convicted in Connecticut for numerous unpermitted touchings of women where his modus operandi was similar to that which he used in Boston; but in Boston he raped and murdered his victims whereas in Connecticut he only fondled them after gaining access to their apartments. Had the police kept records which indicated the sexual aspects of his crime, the Boston Strangler would have been checked out as a suspect in the multi-state alarm sent out by the Boston police.

*Id.* Thus, the legislation criminalizing sexual offenses was interpreted as criminalizing an unpermitted touching that was sexually based.

■ There is nothing to suggest that the General Assembly intended that the term "abuse," as used in the definition of "sexual contact," be limited to circumstances involving "a physical attack intended to inflict sexual injury."[8] We hold that, in light of the plain language of the statute and the legislative history, a touching for the purpose of "abuse" refers to a wrongful touching, a touching of another person's intimate area for a purpose that is harmful, injurious or offensive.

Appellant argues that the term abuse should not be so construed for two reasons. Initially he argues that a broad construction of the term "abuse" renders the term superfluous; it "equate[s] abuse with any contact of a sexual organ or part of the body." That argument is without merit. The definition of abuse adopted today does not criminalize any touching; it requires a sexually oriented touching committed for the purpose of inflicting harm on another, physical or otherwise. Indeed, the statute makes clear that not all touchings constitute "sexual contact"; the statute specifically excludes "a common expression of familial or friendly affection" or "an act for an accepted medical purpose." C.L. § 3-301(f)(3)(i)(ii).

Appellant further contends that a broad construction of the term abuse, in the context of sexual contact, conflicts with prior decisions holding that the crime of sexual child abuse is broader than a sexual offense. *See Cooksey v. State,* 359 Md. 1, 24, 752 A.2d 606 (2000) ("a charge of sexual child abuse may

---

**8.** It appears that, at the time this legislation was being considered, at least one other state, Colorado, defined "sexual contact" as "the intentional touching of the victim's intimate parts ... for the purposes of sexual arousal, gratification, or abuse." COLO REV. STAT. § 18-3-401(4) (1973, 1976 Cum.Supp.). *See Rape Law Comparison for Selected States,* at 1–10 (July 1975), *in* GOVERNOR'S COMMISSION TO STUDY IMPLEMENTATION OF THE ERA: ISSUES IN RAPE LEGISLATION 1975–1976. Wyoming currently has a statute that is very similar to Maryland's statute, defining "sexual contact" as "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts...." WYO. STAT. ANN. § 6-2-301(a)(vi). We could find no cases in those two jurisdictions holding that "abuse" was limited to "a physical attack intended to inflict sexual injury."

be sustained on evidence that would not support a conviction under the sexual offense ... laws"); *Tate v. State,* 182 Md. App. 114, 124, 957 A.2d 640 ("Sexual child abuse is a broader crime than a fourth degree sexual offense."), *cert. denied,* 406 Md. 747, 962 A.2d 373 (2008). Our decision today does not conflict with those cases. As Judge Moylan explained in *Tate,* 182 Md.App. at 126, 128, 957 A.2d 640, a fourth degree sexual offense requires a "touching," of an "intimate area," "without the consent of the other," and with "a very particularized specific intent." *See* C.L. §§ 3–301(f), 308. Sexual abuse of a minor, by contrast, involves "sexual molestation or exploitation of a minor," statutory language that encompasses a wider variety of conduct, with "no comparable mental requisite." *Tate,* 182 Md.App. at 126, 128, 957 A.2d 640. *See Brackins v. State,* 84 Md.App. 157, 162, 578 A.2d 300 (1990) (evidence sufficient to support conviction of sexual child abuse when Brackins " 'exploited' " twelve-year-old victim by partially disrobing her for his own gratification or interest).

Thus, even with our interpretation of the term "abuse," in the context of sexual contact, sexual child abuse remains a broader crime than a fourth degree sexual offense, and our decision is not inconsistent with the above cases. It is consistent, however, with the plain language of the statute and the legislative history.

Appellant's proposed jury instruction, that "abuse" means a physical attack with the intent to inflict sexual injury, was not a correct statement of law. His proposed definition of "abuse" was too narrow. Accordingly, the circuit court properly declined to give the requested instruction.[9]

## II.

### Sufficiency of the Evidence

Appellant next argues that the evidence was insufficient to support his convictions. With respect to his conviction of a

---

9. Appellant does not argue that the trial court was required to give a definition of abuse, even if the one he requested was not correct.

fourth degree sexual offense, we previously have explained that C.L. § 3–308 prohibits "sexual contact with another without consent of the other." "Sexual contact" is defined as "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party." C.L. § 3–301(f).

Appellant does not contest that, pursuant to the statute, he touched the victim in an intimate area. Rather, he contends that there was insufficient evidence to show that he touched the victim for the purpose of sexual arousal or gratification, or " 'for the abuse of either party' or to inflict sexual injury." Accordingly, he argues, the evidence was insufficient to support his conviction for fourth degree sexual offense.

Appellant further argues that, although conviction of a fourth degree sexual offense is not, as a general rule, a prerequisite to a conviction for the crime of sexual abuse of a minor, *see Tribbitt v. State*, 403 Md. 638, 652, 943 A.2d 1260, *cert. denied*, —— U.S. ——, 129 S.Ct. 132, 172 L.Ed.2d 38 (2008), it was a prerequisite in this case because the judge instructed the jury that it could find him guilty of the crime of sexual abuse of a minor only if it found that he "sexually molested or exploited the victim by a fourth degree sex offense." Thus, appellant argues, if the evidence was insufficient to support his conviction for a fourth degree sexual offense, his conviction for sexual abuse of a minor should also be reversed.

The State, on the other hand, argues that the evidence was sufficient to support appellant's conviction for a fourth degree sexual offense. Accordingly, it argues that all of appellant's convictions should be affirmed.

We review a challenge to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Accord McKenzie v. State*, 407 Md. 120, 136, 962 A.2d 998 (2008). In conducting this

review, "[w]e give due regard to the jury's finding of facts and its responsibility to weigh and resolve conflicting evidence, draw reasonable inferences from the evidence, and determine witness credibility." *Brown v. State,* 182 Md.App. 138, 156, 957 A.2d 654 (2008). "We do not measure the weight of the evidence; rather, our concern is only whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997).

▇▇ Here, there was sufficient evidence to support appellant's conviction for fourth degree sexual offense. Although appellant testified that he did not touch the victim for sexual arousal or gratification, or to harm her, the jury was free to disbelieve his testimony. *See Walker v. Grow,* 170 Md.App. 255, 275, 907 A.2d 255 (2006) (" 'The trier of fact may believe or disbelieve, accredit or disregard, any evidence introduced.' ") (quoting *Great Coastal Express, Inc. v. Schruefer,* 34 Md.App. 706, 725, 369 A.2d 118 (1977)), *cert. denied,* 396 Md. 13, 912 A.2d 649 (2006). " '[S]ince intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence.' " *Ford v. State,* 330 Md. 682, 703, 625 A.2d 984 (1993) (quoting *Davis v. State,* 204 Md. 44, 51, 102 A.2d 816 (1954)). In *Holloway v. State,* 312 Ark. 306, 849 S.W.2d 473, 476 (1993), the Supreme Court of Arkansas held that a jury properly could infer that the touching of a girl's breasts was for the purpose of sexual gratification without specific proof that it was so motivated.

Here, there were sufficient facts for the jury to infer that appellant touched the victim on the breast and between her legs for the purpose of sexual arousal, gratification, or abuse. In addition to appellant's actions in repeatedly touching the victim's breasts and "twist[ing] her breast area on the nipple area," despite her requests to stop, appellant made several statements indicating that the touching was made for a purpose proscribed by the statute. When the victim hit appellant

after he would not stop touching her chest and asked how he liked it, appellant responded: "Ooooh baby." At another point, appellant stated: " 'Oooh, these [the victim's breasts] are nice, I need to mount these on the wall.' " And when appellant was in the computer room looking at what the victim testified was a half-naked woman in a leather suit, he said: " 'I'm going to whip you with a whip and put you in this suit.' "

These statements, in conjunction with appellant's repeated touching of the victim, were sufficient to establish, beyond a reasonable doubt, that appellant touched the victim for the purpose of sexual arousal or gratification, or for abuse. There was sufficient evidence to support appellant's convictions.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**