PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4102

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSMIN ALFARO,

Defendant-Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:14-cr-00221-PWG-1)

Argued: March 24, 2016                    Decided: August 29, 2016

Before Traxler, Shedd, and Floyd, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion in which Judge Shedd and Judge Floyd joined.

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. James I. Pearce, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Leslie Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Sujit Raman, Chief of Appeals, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

TRAXLER, Circuit Judge:

Osmin Alfaro, a native of El Salvador, entered the United States illegally when he was a teenager. In 2003, he was convicted in Maryland of third-degree sexual offense for sexually assaulting his then-estranged wife. Alfaro was deported in 2008, after failing to register as a sex offender in Maryland, and he illegally re-entered the country in 2010. Alfaro came to the attention of federal authorities in 2014, and he was charged with, and ultimately pleaded guilty to, one count of failing to register as a sex offender, see 18 U.S.C. § 2250, and one count of illegal re-entry, see 8 U.S.C. § 1326. After concluding that Alfaro's prior felony conviction qualified as a crime of violence and applying a 16-level enhancement, see U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2014), the district court sentenced Alfaro to 46 months' imprisonment. Alfaro appeals his sentence, arguing that the district court erred in concluding that his previous conviction amounted to a crime of violence. We affirm.

I.

The Sentencing Guidelines provide for a 16-level enhancement in illegal entry cases where the defendant was deported after "a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary to § 2L1.2 defines "crime of violence" as

2

any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

To determine whether Alfaro's Maryland conviction qualifies as a crime of violence under § 2L1.2, we apply the familiar categorical approach and compare the elements of the prior offense to the elements of the generic federal offense. The prior conviction qualifies as a crime of violence under the categorical approach if the elements of the underlying statute are the same as or narrower than the definition of the generic offense. See United States v. Flores-Granados, 783 F.3d 487, 491 (4th Cir.), cert. denied, 136 S. Ct. 224 (2015). "However, if the state statute criminalizes a broader scope of conduct than the Guideline crime then it is not categorically a crime of violence." Id. (internal quotation marks and alterations omitted)

The Maryland statute under which Alfaro was convicted provides that:

(a) A person may not:

3

(1) (i) engage in sexual contact with another without the consent of the other; and

    (ii) 1. employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;

    2. suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;

    3. threaten, or place the victim in fear, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

    4. commit the crime while aided and abetted by another;

(2) engage in sexual contact with another if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual;

(3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;

(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or

(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

Md. Code Ann., Crim. Law § 3-307 (2002). At the time of Alfaro's offense, "sexual contact" was defined as "an

4

intentional touching of the victim's or actor's genital, anal, or other intimate area[1] for sexual arousal or gratification, or for the abuse of either party." Md. Code. Ann., Crim. Law § 3-301(f)(1) (2002).

Because § 3-307 lists alternate sets of elements that effectively create multiple versions of the crime of third-degree sexual offense, reference to the statute alone does not identify the set of elements that applied to Alfaro. We are thus faced with a "divisible" statute, a circumstance that permits us to modify the categorical approach and consult a limited universe of "extra-statutory materials . . . to determine which statutory phrase was the basis for the conviction." Descamps v. United States, 133 S. Ct. 2276, 2285 (2013) (internal quotation marks omitted).

The record in this case includes Alfaro's state-court indictment and jury instructions, both of which are within the universe of documents that we may consult. See Shepard v. United States, 544 U.S. 13, 20-21 (2005). These materials establish that Alfaro was convicted of violating § 3-307(a)(1), but do not further narrow the offense. Under these

---

[1] Under Maryland law, "other intimate area" includes the buttocks, see Bible v. State, 982 A.2d 348, 358 (Md. 2009), and an intentional touching of an intimate area over the clothes still amounts to sexual contact, see LaPin v. State, 981 A.2d 34, 36-37, 45 (Md. Ct. Spec. App. 2009).

circumstances, the categorical approach requires us to "consider whether the full range of conduct covered by the statutory language, including the most innocent conduct proscribed by the statute, qualifies" as a predicate offense. United States v. Diaz-Ibarra, 522 F.3d 343, 352 (4th Cir. 2008). Of the various offenses identified by the Guidelines as crimes of violence, "forcible sex offense" is the only one arguably applicable to this case.[2]

## II.

On appeal, Alfaro concedes that violations of § 3-307(a)(1) are "forcible" offenses for purposes of U.S.S.G. § 2L1.2. He argues, however, that violations of the Maryland statute do not qualify as "sex offenses." Relying on our decision in Diaz-Ibarra, Alfaro contends that an intent to gratify sexual urges is a necessary element of a "sex offense." As noted above, an intent to abuse rather than an intent to gratify sexual urges can support a conviction under the state statute, and Alfaro

---

[2]    We reject the government's argument that a violation of § 3-307(a)(1) qualifies as a crime of violence because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). While the first three subsections of § 3-307(a)(1) all require the use or threatened use of force, the final subsection, which merely requires that the offense be aided or abetted by another, contains no use-of-force element. See Md. Code Ann., Crim. Law § 3-307(a)(1) (2002).

therefore argues that his conviction does not qualify as a forcible sex offense under the categorical approach.

A.

In 2008, the Sentencing Commission resolved a circuit split by amending § 2L1.2 to include the parenthetical statement that the forcible-sex-offense category includes offenses "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced."  U.S.S.G. app. C, vol. III, Amendment 722; see United States v. Chacon, 533 F.3d 250, 257 (4th Cir. 2008) (pre-amendment case holding that a sex offense may be "forcible" even without the use of physical force).[3]  The Guideline thus clarifies the circumstances under which a sex offense may be considered forcible, but it provides no insight on the issue at the heart of this appeal -- the kinds of offenses that amount to "sex offenses."

As previously explained, we answer that question through application of the categorical approach, comparing the statutory definition of the prior conviction to the definition of the

---

[3]  In United States v. Shell, 789 F.3d 335 (4th Cir. 2015), we considered the meaning of "forcible sex offenses" as used in U.S.S.G. § 4B1.2, the career-offender guideline.  Noting that the Sentencing Commission did not amend § 4B1.2 to include the parenthetical statement added to § 2L1.2, we held that an offense that could be "committed without physical force and predicated on legally invalid consent" was not a "forcible sex offense" as used in § 4B1.2.  Id. at 345-46.

7

generic federal offense -- here, "forcible sex offense." In cases where the enumerated generic offense is a traditional, common-law crime, we define the generic federal offense "based on how the offense is defined 'in the criminal codes of most states.'" United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011) (quoting Taylor v. United States, 495 U.S. 575, 598 (1990)). "Forcible sex offense," however, does not describe a traditional common-law crime, and the phrase thus does not invoke an established, generic structure. Because the phrase is a broad and inclusive phrase that could encompass multiple, divergent offenses in any given state, "it is difficult, if not impossible," to sift through the multitudes of qualifying state offenses and identify a consensus set of the minimum elements necessary to define the category. United States v. Rodriguez, 711 F.3d 541, 556 (5th Cir. 2013) (en banc) ("As a conceptual matter, it is difficult, if not impossible, to identify an accurate set of discrete elements that define offense categories that do not have a generic structure that is rooted in common law. Moreover, wide variations in prohibited conduct under state codes make it difficult, if not impossible, to determine whether a majority consensus exists with respect to the element components of an offense category or the meaning of those elements." (citation omitted)).

Although we did not explicitly note the difficulty of distilling the elements of non-traditional crimes, this court in Chacon did not survey the states' criminal codes to define the "forcible" aspect of "forcible sex offenses," but instead looked to the plain, ordinary meaning of the language used by the Guidelines. See Chacon, 533 F.3d at 257 ("The term 'forcible sex offense' is not defined in the Guidelines and thus must be accorded its ordinary, contemporary meaning."). We took the same approach in Diaz-Ibarra when defining "sexual abuse of a minor," another enumerated crime of violence that lacks a common-law antecedent. See Diaz-Ibarra, 522 F.3d at 348 ("Because the Sentencing Guidelines do not define the phrase ['sexual abuse of a minor'], we interpret it by employing the common meaning of the words that the Sentencing Commission used."); cf. United States v. Rangel-Castaneda, 709 F.3d 373, 377-79 (4th Cir. 2013) (surveying state laws when determining the generic definition of "statutory rape" as used in U.S.S.G. § 2L1.2).[4] This plain-meaning approach is consistent with that of

_____

[4] While courts have disagreed about whether statutory rape is a common-law offense, compare United States v. Rodriguez, 711 F.3d 541, 559 (5th Cir. 2013) (en banc), with United States v. Brooks, 841 F.2d 268, 269 (9th Cir. 1988) (per curiam), the crime is of ancient lineage and has a well-understood traditional meaning – carnal knowledge of a child under the age of consent, see Rodriguez, 711 F.3d at 570-71 (Graves, J., concurring in part and concurring in the judgment); Brooks, 841 F.2d at 269. Looking to the states' various
(Continued)

9

other circuits. See United States v. Ramirez-Garcia, 646 F.3d 778, 783 (11th Cir. 2011) ("For offenses not developed in the common law, courts define a generic offense based on the ordinary, contemporary, and common meaning of the statutory words . . . ." (internal quotation marks omitted)); United States v. Trinidad-Aquino, 259 F.3d 1140, 1144 (9th Cir. 2001) (where sentencing enhancement turns on enumerated offense that is not "a traditional common law crime," the enumerated offense "can only be construed by considering the ordinary, contemporary, and common meaning of the language"); United States v. Martinez-Carillo, 250 F.3d 1101, 1104 (7th Cir. 2001) ("Martinez-Carillo's state conviction squarely fits within the federal understanding of the phrase 'sexual abuse of a minor,' which adopts the ordinary, contemporary, and common meaning of the words."); accord Rodriguez, 711 F.3d at 556; United States v. Romero–Hernandez, 505 F.3d 1082, 1087 (10th Cir. 2007); United States v. Montenegro-Recinos, 424 F.3d 715, 717 (8th Cir. 2005); United States v. Londono-Quintero, 289 F.3d 147, 153 (1st Cir. 2002).

---

formulations to determine the generic federal definition of statutory rape thus does not present the same difficulties as does identifying a consensus set of elements defining "forcible sex offense" or "sexual abuse of a minor."

10

Accordingly, following the approach laid out in Chacon, we turn to the plain and ordinary meaning of the Guidelines' language to determine whether a conviction under Md. Code Ann., Crim. Law § 3-307(a)(1) qualifies as a "forcible sex offense" for purposes of U.S.S.G. § 2L1.2.[5]

B.

The ordinary construction of the "sex offense" phrase suggests that it simply refers to criminal offenses involving sexual conduct. See Black's Law Dictionary (10th ed. 2014) (defining "sexual offense" as "[a]n offense involving unlawful sexual conduct, such as prostitution, indecent exposure, incest, pederasty, and bestiality"); American Heritage College Dictionary (3d ed. 1997) (defining "sex" as, inter alia, "[t]he sexual urge or instinct as it manifests itself in behavior"). While that definition is expansive, the language and history of § 2L1.2 make it clear that "forcible sex offenses" is a broad category encompassing a wide range of statutory offenses. After all, the Sentencing Commission did not limit its definition of "crime of violence" to include only the most serious sex

---

[5] In Chacon, we concluded that the word "forcible" did not require the use of physical force as it includes compulsion effectuated through power or pressure. See Chacon, 533 F.3d at 257. However, because the defendant did not dispute that his Maryland conviction for second-degree sexual offense qualified as a "sex offense," Chacon did not offer a comprehensive definition of the full phrase "forcible sex offense." See id.

11

offenses, such as rape, but instead included all sex offenses that are forcibly committed. Moreover, the Commission further confirmed the broad reach of the category by amending the re-entry Guideline to clarify that a sex offense may be a forcible offense even in the absence of physical force and in the presence of factual (but legally invalid) consent. See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Indeed, the circuits considering the question have defined the "sex offense" portion of "forcible sex offense" very broadly. For example, the Fifth Circuit defines "sex offense" as an "offense proscribing sexual conduct," United States v. Garza-Guijan, 714 F.3d 332, 334 (5th Cir. 2013), while the Tenth Circuit defines it as "an offense involving unlawful sexual conduct," Romero-Hernandez, 505 F.3d at 1087 (internal quotation marks and alteration omitted). Similarly, in the Ninth and Eleventh Circuits, a "sex offense" is an offense involving a "sexual act," United States v. Quintero-Junco, 754 F.3d 746, 753 (9th Cir. 2014) or "sexual contact," United States v. Contreras, 739 F.3d 592, 597 (11th Cir. 2014).

Alfaro insists, however, that these definitions of "sex offense" are too broad. Relying on our decision in Diaz-Ibarra, Alfaro contends that an intent to gratify sexual urges is a necessary element of a "sex offense."

12

The question in Diaz-Ibarra was whether the defendant's convictions for attempted child molestation qualified as "sexual abuse of a minor" and thus a crime of violence under U.S.S.G. § 2L1.2. (Like the "forcible sex offense" phrase at issue in this case, "sexual abuse of a minor" is identified as a crime of violence by the commentary to U.S.S.G. § 2L1.2.) Observing that the common meaning of the word "sexual" was "of or relating to the sphere of behavior associated with libidinal gratification," 522 F.3d at 349 (internal quotation marks omitted), the Diaz-Ibarra court defined the phrase "sexual abuse of a minor" as the "physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification," id. at 352 (internal quotation marks omitted). Alfaro argues that there is no meaningful difference between "sex" and "sexual," and that the same meaning must be applied to both words, particularly since the words are used in the same sentence in the Guidelines commentary. Accordingly, Alfaro argues that to qualify as a forcible sex offense under the Guidelines, the underlying offense must require that the prohibited conduct be committed for a purpose associated with sexual gratification. And because § 3-307(a)(1) can be violated with an intent to abuse rather than an intent to gratify sexual urges, Alfaro contends that his conviction does not qualify as a forcible sex offense. We disagree.

13

While the words "sex" and "sexual" may have similar meanings in certain contexts, the Diaz-Ibarra court was defining the phrase "sexual abuse of a minor," while we are defining the phrase "forcible sex offense." Those phrases are very different, and those differences require different interpretations of "sex" and "sexual." See Yates v. United States, 135 S. Ct. 1074, 1082 (2015) ("[I]dentical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute.").

"Sexual abuse of a minor," the phrase at issue in Diaz-Ibarra, is a "broad" phrase "capturing physical or nonphysical conduct," United States v. Perez-Perez, 737 F.3d 950, 953 (4th Cir. 2013), and it is the sexual-gratification element that polices the line between lawful and unlawful conduct. Indeed, as the court made clear in Diaz-Ibarra, the intent to gratify sexual urges is central to the offense of sexual abuse of a minor: "The clear focus of the phrase ['sexual abuse'] is on the intent of the abuser -- sexual gratification -- not on the effect on the abused. However one styles it, 'sexual abuse' is an intent-centered phrase; the misuse of the child for sexual purposes completes the abusive act." Id. at 350. The court in Diaz-Ibarra thus did not hold that the word "sexual" must always and in all circumstances be defined to include an intent to gratify sexual urges; it held that an intent to gratify sexual

14

urges is central to and therefore is part of the ordinary meaning of the phrase "sexual abuse." See id. at 349 (explaining that the court must "consider the phrase as a whole to arrive at its meaning").

An intent to gratify sexual urges, however, is not central to the category of offenses qualifying as "forcible sex offenses." Although this circuit has not previously formulated a comprehensive definition of "forcible sex offense," we have noted that the phrase is "intended to connote rape or other qualifying conduct." Rangel-Castaneda, 709 F.3d at 380; accord United States v. Bolanos-Hernandez, 492 F.3d 1140, 1144 (9th Cir. 2007) ("[R]ape is a 'sex offense,' as the term is commonly understood."). Thus, however "forcible sex offense" is defined, that definition must, at the very least, be broad enough to include rape in its scope. While there is variation in the states' definitions of rape (however labeled), not a single state includes a sexual-gratification element when defining the most serious forms of the offense.[6] Because the intent to

---

[6] See Ala. Code § 13A-6-61 (first-degree rape); Alaska Stat. Ann. § 11.41.410 (first-degree sexual assault); Ariz. Rev. Stat. Ann. § 13-1406 (sexual assault); Ark. Code Ann. § 5-14-103(a) (rape; no sexual-gratification element if intercourse involved); Cal. Penal Code § 261(a) (rape); Colo. Rev. Stat. Ann. § 18-3-402(1)(a) (sexual assault; no sexual-gratification element if penetration involved); Conn. Gen. Stat. Ann. § 53a-70(a)(1) (first-degree sexual assault); Del. Code Ann. tit. 11, § 773 (first-degree rape); Fla. Stat. Ann. § 794.011 (sexual (Continued)

15

gratify sexual urges is simply <u>not relevant</u> to the most serious

forms of the paradigmatic forcible sex offense, we cannot

---

battery); Ga. Code Ann. § 16-6-1 (rape); Haw. Rev. Stat. Ann. § 707-730 (first-degree sexual assault); Idaho Code Ann. § 18-6101 (rape); 720 Ill. Comp. Stat. Ann. 5/11-1.20 (criminal sexual assault); Ind. Code Ann. § 35-42-4-1 (rape); Iowa Code Ann. § 709.1 (sexual abuse); Kan. Stat. Ann. § 21-5503 (rape); Ky. Rev. Stat. Ann. § 510.040 (first-degree rape); La. Stat. Ann. § 14:41 (rape); Me. Rev. Stat. tit. 17-A, § 253 (gross sexual assault); Md. Code Ann., Crim. Law § 3-303 (first-degree rape); Mass. Gen. Laws Ann. ch. 265, § 22 (rape); Mich. Comp. Laws Ann. § 750.520b (first-degree criminal sexual conduct); Minn. Stat. Ann. § 609.342 (first-degree criminal sexual conduct; no sexual-gratification element if sexual penetration involved); Miss. Code. Ann. § 97-3-95 (sexual battery); Mo. Ann. Stat. § 566.030 (first-degree rape); Mont. Code Ann. § 45-5-503 (sexual intercourse without consent); Neb. Rev. Stat. Ann. § 28-319 (first-degree sexual assault); Nev. Rev. Stat. Ann. § 200.366 (sexual assault); N.H. Rev. Stat. Ann. § 632-A:2 (aggravated felonious sexual assault); N.J. Stat. Ann. § 2C:14-2(a) (aggravated sexual assault); N.M. Stat. Ann. § 30-9-11 (criminal sexual penetration); N.Y. Penal Law § 130.35 (first-degree rape); N.C. Gen. Stat. Ann. § 14-27.21 (first-degree forcible rape); N.D. Cent. Code Ann. § 12.1-20-03 (gross sexual imposition); Ohio Rev. Code Ann. § 2907.02 (rape); Okla. Stat. Ann. tit. 21, § 1111 (rape); Or. Rev. Stat. Ann. § 163.375 (first-degree rape); 18 Pa. Stat. and Cons. Stat. Ann. § 3121 (rape); 11 R.I. Gen. Laws Ann. § 11-37-2 (first-degree sexual assault); S.C. Code Ann. § 16-3-652 (criminal sexual conduct); S.D. Codified Laws § 22-22-1 (rape); Tenn. Code Ann. § 39-13-502 (aggravated rape); Tex. Penal Code Ann. § 22.021 (aggravated sexual assault); Utah Code Ann. § 76-5-402 (rape); Vt. Stat. Ann. tit. 13, § 3252 (sexual assault); Va. Code Ann. § 18.2-61 (rape); Wash. Rev. Code Ann. § 9A.44.040 (first-degree rape; no sexual-gratification element if vaginal intercourse involved); W. Va. Code Ann. § 61-8B-3 (first-degree sexual assault; no sexual-gratification element if sexual intercourse involved); Wis. Stat. Ann. § 940.225 (first-degree sexual assault; no sexual-gratification element if intercourse involved); Wyo. Stat. Ann. § 6-2-302 (first-degree sexual assault; no sexual-gratification element if intercourse involved).

conclude that an intent to gratify sexual urges is part of the ordinary meaning of "forcible sex offense."

Moreover, since no state requires proof of an intent to gratify sexual urges for a rape conviction, accepting Alfaro's argument would exclude all convictions for the most serious of all forcible sex offenses from the definition of "forcible sex offense," while at the same time permitting many less-serious crimes to be so classified.[7] We decline to endorse a definition that would lead to such illogical results.[8] Cf. Voisine v.

---

[7] In many states, less serious sexual offenses -- those involving touching rather than penetration, for example -- do include the intent to gratify sexual urges as an element of the offense. See, e.g., Ind. Code Ann. § 35-42-4-8 (sexual battery); Kan. Stat. Ann. § 21-5505 (sexual battery); Ky. Rev. Stat. Ann. §§ 510.110 & 510.010(7) (sexual abuse); Neb. Rev. Stat. Ann. §§ 28-320 & 28-318(5) (second- and third-degree sexual assault); N.C. Gen. Stat. Ann. § 14-27.33 (sexual battery); N.D. Cent. Code Ann. §§ 12.1-20-07 & 12.1-20-02(5) (sexual assault); Or. Rev. Stat. Ann. §§ 163.427 & 163.305(6) (sexual abuse); 18 Pa. Stat. and Cons. Stat. Ann. §§ 3126 & 3101 (indecent assault); 11 R.I. Gen. Laws Ann. §§ 11-37-4 & 11-37-1(7) (second-degree sexual assault); Tenn. Code Ann. §§ 39-13-505 & 39-13-501(6) (sexual battery); Va. Code Ann. §§ 18.2-67.4 & 18.2-67.10(6) (sexual battery); W. Va. Code Ann. §§ 61-8B-7 & 61-8B-1 (6) (sexual abuse).

[8] Alfaro suggests that rape offenses predicated on sexual intercourse would qualify as forcible sex offenses because intercourse requires "an erect penis, which necessarily involves sexual gratification." Brief of Appellant at 21. The categorical approach, however, is concerned only with the elements of the underlying offense, not the manner in which the offense was actually committed. See Mathis v. United States, 136 S. Ct. 2243, 2248 (2016) ("[T]he categorical approach . . . focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic (Continued)

17

United States, 136 S. Ct. 2272, 2280 (2016) (addressing statute barring possession of firearms by those convicted of a "misdemeanor crime of violence" and rejecting definition of that phrase that "risk[ed] rendering [the statute] broadly inoperative in . . . 35 jurisdictions").

Accordingly, we reject Alfaro's argument that to qualify as a forcible sex offense under U.S.S.G. § 2L1.2, the underlying offense must include as an element the intent to gratify sexual urges. Instead, we join the other circuits addressing the issue and hold that, for purposes of the re-entry Guideline, a "sex offense" is an offense involving sexual conduct with another person. See Quintero-Junco, 754 F.3d at 753; Contreras, 739 F.3d at 597; Garza-Guijan, 714 F.3d at 334; Romero-Hernandez, 505 F.3d at 1087. And as the Guidelines commentary itself makes clear, a sex offense is "forcible" if it is not consensual. See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (explaining that "forcible sex offenses" includes offenses "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced"). While this

---

[offense and] ignor[es] the particular facts of the case."). Thus, even assuming that an intent to gratify sexual urges is factually present in most rape cases, the absence of a sexual-gratification element would prevent rape offenses from qualifying as forcible sex offenses under Alfaro's proposed definition.

18

definition is broad, its breadth is compelled by the expansive language chosen by the Sentencing Commission -- language that, in our view, provides no principled basis for us to narrow the category of qualifying offenses.

C.

Having defined the relevant phrase, we turn now to the ultimate question in this case: Whether the least culpable version of the crime defined by § 3-307(a)(1) -- sexual contact while aided or abetted by another -- categorically qualifies as a "forcible sex offense" and thus a "crime of violence" under U.S.S.G. § 2L1.2.

We believe that question must be answered in the affirmative. All forms of the offense as charged to the jury require nonconsensual sexual contact, and the jury was thus required to find that Alfaro engaged in sexual contact without consent in order to convict him. Accordingly, the district court did not err by treating Alfaro's Maryland conviction as a "forcible sex offense" under U.S.S.G. § 2L1.2(b)(1)(A). See Quintero-Junco, 754 F.3d at 753 (statute prohibiting non-consensual sexual contact with person over the age of 15 and defining "sexual contact" as the direct or indirect touching of "any part of the genitals, anus or female breast" "fits comfortably within the broad definition of forcible sex offense"); United States v. Diaz-Corado, 648 F.3d 290, 293 (5th

19

Cir. 2011) (per curiam) (state statute prohibiting the non-consensual, through-clothing "touching of the victim's intimate parts . . . for the purposes of sexual arousal, gratification, or abuse" constitutes a forcible sex offense under U.S.S.G. § 2L1.2); Romero-Hernandez, 505 F.3d at 1087-88 & n.4 (conviction under statute prohibiting non-consensual touching, even through clothing, of "victim's intimate parts" for "purposes of sexual arousal, gratification, or abuse" qualifies as forcible sex offense).

## III.

For the foregoing reasons, we find no error by the district court, and we hereby affirm Alfaro's sentence.

AFFIRMED

20